**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**

IN RE:  TENRGYS, LLC, *et al.*,[1]               CASE NO. 21-01515-JAW
DEBTORS (Jointly Administered)                            CHAPTER 11

---

**JOINT CHAPTER 11 PLAN OF REORGANIZATION**
**OF TENRGYS, LLC AND ITS DEBTOR SUBSIDIARIES**

---

> **THIS IS NOT A SOLICITATION OF AN ACCEPTANCE OR REJECTION OF THE PLAN. ACCEPTANCES OR REJECTIONS MAY NOT BE SOLICITED UNTIL THIS DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE COURT. THIS DRAFT PLAN HAS NOT BEEN APPROVED BY THE BANKRUPTCY COURT.**

Glenn Gates Taylor, MSB No. 7453
John H. Geary, Jr., MSB No. 101540
Christopher H. Meredith, MSB No. 103656
Copeland, Cook, Taylor & Bush, P.A.
P.O. Box 6020
Ridgeland, MS  39158
Telephone:  (601) 856-7200
Facsimile:  (601) 856-7626
gtaylor@cctb.com
jgeary@cctb.com
cmeredith@cctb.com
*Proposed Counsel for the Debtors*

---

[1] Jointly administered with *In re Tellus Energy, LLC*, No. 21-01516-JAW; *In re Top Ten Holdings, LLC*, No. 21-01517-JAW; *In re Treetop Midstream Services, LLC*, No. 21-01518-JAW; *In re Acadiana Mineral Owners, LLC*, No. 21-01519-JAW; *In re Antioch Pipeline Company, LLC*, No. 21-01546-JAW; *In re BAX, LLC*, No. 21-01520-JAW; *In re BGGCO, LLC*, No. 21-01537-JAW; *In re BOE, LLC*, No. 21-01521-JAW; *In re BT Lands, LLC*, No. 21-01538-JAW; *In re BXO Lands, LLC*, No. 21-01539-JAW; *In re Cohay Conservation Area, LLC*, No. 21-01540-JAW; *In re Cohay Wildlife, LLC*, No. 21-01541-JAW; *In re Eutaw Ventures, LLC*, No. 21-01522-JAW; *In re Greenleaf CO2 Solutions, LLC*, No. 21-01542-JAW; *In re Highland Colony Capital, LLC*, No. 21-01543-JAW; *In re Jurassic Seismic Company*, No. 21-01549-JAW; *In re LASO, LLC*, No. 21-01523-JAW; *In re Leaf River Land Co., LLC*, No. 21-01544-JAW; *In re NOMS, LLC*, No. 21-01524-JAW; *In re North Cohay, LLC*, 21-01525-JAW; *In re PCE, LLC*, No. 21-01526-JAW; *In re RFND, LLC*, No. 21-01527-JAW; *In re RFS, LLC*, No. 21-01528-JAW; *In re SNPI, LLC*, No. 21-01529-JAW; *In re South Cohay, LLC*, No. 21-01530-JAW; *In re STP Ventures, LLC*, No. 21-01531-JAW; *In re Tallahala Exploration, LLC*, No. 21-01532-JAW; *In re Telpico USA, LLC*, No. 21-01533-JAW; *In re TC Energy, LLC*, No. 21-01534-JAW; *In re TPCO, LLC*, No. 21-01545-JAW; *In re WCOA, LLC*, No. 21-01535-JAW; *In re WYC Lands, LLC*, No. 21-01547-JAW; and *In re Xlake Pipeline Company, LLC*, No 21-01548-JAW.

TABLE OF CONTENTS

ARTICLE I. DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, AND GOVERNING LAW ..................................................6
    A.    Defined Terms.....................................................................................6
    B.    Rules of Interpretation......................................................................18
    C.    Computation of Time.........................................................................19
    D.    Governing Law. ..................................................................................19
    E.    Reference to Monetary Figures.........................................................19
    F.    Consultation, Information, Notice, and Consent Rights..................19
    G.    Conflicts. ............................................................................................19
ARTICLE II. ADMINISTRATIVE CLAIMS AND PRIORITY TAX CLAIMS ....................20
    A.    Administrative Claims. .....................................................................20
        1.    General Administrative Claims....................................................20
        2.    Professional Compensation........................................................21
    B.    Priority Tax Claims............................................................................21
    C.    Statutory Fees. ...................................................................................22
ARTICLE III. CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS.......................................................................................22
    A.    Classification of Claims and Interests. .............................................22
    B.    Treatment of Claims and Interests....................................................23
        1.    Class 1 – Secured 2012 RBL Facility Claims..............................23
        2.    Class 2 – Other Secured Claims .................................................23
        3.    Class 3 – Other Priority Claims. ................................................24
        4.    Class 4 – 2013 Loan Claims.........................................................24
        5.    Class 5 – General Unsecured Claims. ........................................26
        6.    Class 6 – TOG Claims. ................................................................26
        7.    Class 7 – Intercompany Claims...................................................27
        8.    Class 8 – Intercompany Interests in the Debtors........................27
        9.    Class 9 – Existing Tenrgys Equity Interests...............................27
    C.    Special Provision Governing Unimpaired Claims. ..........................28
    D.    Elimination of Vacant Classes...........................................................28
    E.    Confirmation Under Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code. ................................................................................28
    F.    Voting Classes; Presumed Acceptance by Non-Voting Classes...........28
    G.    Presumed Acceptance and Rejection of the Plan ...........................28
    H.    Controversy Concerning Impairment................................................28
    I.    Subordinated Claims and Interests. .................................................29
ARTICLE IV. MEANS FOR IMPLEMENTATION OF THE PLAN ..................................29
    A.    Restructuring Support Agreement....................................................29
    B.    General Settlement of Claims and Interests.....................................29
    C.    Restructuring Transactions................................................................29
    D.    Cancellation of Existing Liens and Agreements..............................30
    E.    Sources of Consideration for Plan Distributions. ...........................30
        1.    Exit Facility. .................................................................................31
        2.    Colombian Collateral Tender Transaction. ...............................32
        3.    New Secured Term Loan...............................................................32

|   |   | 4. | New Reorganized Tenrgys Membership Interests. | 33 |
| F. | | | Corporate Existence. | 33 |
| G. | | | Vesting of Assets in the Reorganized Debtors. | 33 |
| H. | | | Corporate Action. | 34 |
| I. | | | Reorganized Equity Documents. | 34 |
| J. | | | Directors and Officers of the Reorganized Debtors. | 35 |
| K. | | | Section 1146 Exemption. | 36 |
| L. | | | SEC Reporting Requirements. | 36 |
| M. | | | Director, Officer, Manager, and Employee Liability Insurance. | 36 |
| N. | | | Employee Obligations of Treetop Midstream Services, LLC. | 36 |
| O. | | | Effectuating Documents; Further Transactions. | 37 |
| P. | | | Payment of Fees and Expenses of Certain Creditors | 37 |
| Q. | | | Preservation of Causes of Action. | 37 |
| R. | | | Preservation of Royalty and Working Interests | 38 |

**ARTICLE V. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES .......... 38**

| A. | | | Assumption and Rejection of Executory Contracts and Unexpired Leases. | 38 |
| B. | | | Claims Based on Rejection of Executory Contracts or Unexpired Leases. | 39 |
| C. | | | Cure of Defaults for Assumed Executory Contracts and Unexpired Leases. | 40 |
| D. | | | Preexisting Obligations to the Debtors under Executory Contracts and Unexpired Leases. | 41 |
| E. | | | Indemnification Obligations. | 41 |
| F. | | | Insurance Policies. | 41 |
| G. | | | Modifications, Amendments, Supplements, Restatements, or Other Agreements. | 42 |
| H. | | | Reservation of Rights. | 42 |
| I. | | | Nonoccurrence of Effective Date. | 42 |
| J. | | | Contracts and Leases Entered Into After the Petition Date. | 42 |

**ARTICLE VI. PROVISIONS GOVERNING DISTRIBUTIONS .......... 43**

| A. | | | Timing and Calculation of Amounts to Be Distributed. | 43 |
| B. | | | Delivery of Distributions and Undeliverable or Unclaimed Distributions. | 43 |
| | 1. | | Record Date for Distribution. | 43 |
| | 2. | | Delivery of Distributions. | 43 |
| | 3. | | Undeliverable Distributions and Unclaimed Property. | 43 |
| C. | | | Manner of Payment. | 44 |
| D. | | | SEC Exemption. | 44 |
| E. | | | Compliance with Tax Requirements. | 44 |
| F. | | | No Postpetition or Default Interest on Claims. | 44 |
| G. | | | Setoffs and Recoupment. | 44 |
| H. | | | No Double Payment of Claims. | 45 |
| I. | | | Claims Paid or Payable by Third Parties. | 45 |
| | 1. | | Claims Paid by Third Parties. | 45 |
| | 2. | | Claims Payable by Third Parties. | 45 |
| | 3. | | Applicability of Insurance Policies. | 46 |
| J. | | | Allocation of Distributions Between Principal and Interest. | 46 |

**ARTICLE VII. PROCEDURES FOR RESOLVING CONTINGENT,**

UNLIQUIDATED, AND DISPUTED CLAIMS.................................................................46
    A.      Allowance of Claims. ..........................................................................................46
    B.      Claims Administration Responsibilities................................................................46
    C.      Estimation of Claims or Interests. .......................................................................47
    D.      Adjustment to Claims or Interests without Objection. .........................................47
    E.      Time to File Objections to Claims or Interests.....................................................47
    F.      Disallowance of Claims. ......................................................................................47
    G.      Amendments to Proofs of Claim. .........................................................................48
    H.      No Distributions Pending Allowance.....................................................................48
    I.      Distributions After Allowance...............................................................................48
    J.      No Interest. ..........................................................................................................48
ARTICLE VIII. SETTLEMENT, RELEASE, INJUNCTION, AND RELATED
    PROVISIONS ...................................................................................................49
    A.      Compromise and Settlement of Claims, Interests, and Controversies...................49
    B.      Discharge of Claims. ............................................................................................49
    C.      Release of Liens. ..................................................................................................50
    D.      Releases by the Debtors.........................................................................................50
    E.      Releases by Holders of Claims and Interests. .......................................................52
    F.      Exculpation. .........................................................................................................53
    G.      Injunction............................................................................................................53
    H.      Protections Against Discriminatory Treatment......................................................54
    I.      Regulatory Activities.............................................................................................54
    J.      Recoupment .........................................................................................................55
    K.      Document Retention ............................................................................................55
ARTICLE IX. CONDITIONS PRECEDENT TO CONFIRMATION  AND
    CONSUMMATION OF THE PLAN ...............................................................55
    A.      Conditions Precedent to Confirmation .................................................................55
    B.      Conditions Precedent to the Effective Date............................................................56
    C.      Waiver of Conditions ...........................................................................................57
    D.      Substantial Consummation ...................................................................................57
    E.      Effect of Failure of Conditions..............................................................................57
ARTICLE X. MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE
    PLAN.................................................................................................................57
    A.      Modification and Amendments .............................................................................57
    B.      Effect of Confirmation on Modifications...............................................................58
    C.      Revocation or Withdrawal of Plan........................................................................58
ARTICLE XI. RETENTION OF JURISDICTION ....................................................58
ARTICLE XII. MISCELLANEOUS PROVISIONS ...................................................60
    A.      Immediate Binding Effect.....................................................................................60
    B.      Additional Documents. .........................................................................................61
    C.      Payment of Statutory Fees....................................................................................61
    D.      Reservation of Rights. ..........................................................................................61
    E.      Successors and Assigns..........................................................................................61
    F.      Notices. ................................................................................................................62
    G.      Term of Injunctions or Stays ................................................................................63
    H.      Entire Agreement .................................................................................................63
    I.      Exhibits ...............................................................................................................63

J.      Nonseverability of Plan Provisions.................................................................63
K.      Votes Solicited in Good Faith. ......................................................................64
L.      Waiver or Estoppel. .......................................................................................64
M.      Closing of Chapter 11 Cases..........................................................................64

## ARTICLE I.
## DEFINED TERMS, RULES OF INTERPRETATION,
## COMPUTATION OF TIME, AND GOVERNING LAW

**A.     Defined Terms.**

As used in the Plan, capitalized terms have the meanings set forth in the Introduction above or in the definitions below.

1.      "*2012 RBL Facility*" means the *Second Amended and Restated Credit Agreement* dated as of August 30, 2012, with Tenrgys as Borrower, Regions Bank as Administrative Agent and LC Issuer, Certain Financial Institutions as Lenders, Regions Capital Markets, a division of Regions Bank, as Sole Lead Arranger and Sole Book Runner, and Capital One, National Association, as Syndication Agent, as amended by (a) the First Amendment thereto dated December 21, 2012, (b) the Second Amendment thereto dated December 23, 2012, (c) the Third Amendment thereto dated May 21, 2015, (d) the Fourth Amendment thereto dated February 1, 2017, (e) the Fifth Amendment thereto dated April 3, 2017, and (f) the Sixth Amendment thereto dated August 30, 2017.

2.      "*2013 Loan*" means the loan or loans outstanding under the 2013 Loan Agreement.

3.      "*2013 Loan Agreement*" means that certain *Term Loan Agreement* dated as of December 23, 2013, with Tenrgys as Borrower, Wilmington Trust, National Association, as Administrative Agent, FS Energy and Power Fund ("FS Energy") as Lead Lender, and Certain Financial Institutions as Lenders, as amended, restated, supplemented or otherwise modified from time to time, and pursuant to which Tenrgys agreed to borrow and FS Energy agreed to loan the principal sum of Seventy-Five Million Dollars ($75,000,000.00) and pursuant to which the Debtors other than Tenrgys guaranteed the 2013 Loan, and other documents executed in connection therewith.

4.      "*2013 Loan Claim*" means any Claim for obligations arising under, or relating to, the 2013 Loan and/or the 2013 Loan Agreement and other documents entered in connection therewith, including without limitation Claims for all principal amounts outstanding, interest, default interest, fees, expenses, costs and other charges arising thereunder or related thereto.

5.      "*Administrative Claim*" means a Claim for costs and expenses of administration of the Estates under sections 503(b), 507(b), or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred on or after the Petition Date through the Effective Date of preserving the Estates and operating the businesses of the Debtors; (b) Allowed Professional Fee Claims; (c) all fees and charges assessed against the Estates under chapter 123 of title 28 of the United States Code, 28 U.S.C. §§ 1911–1930; and (d) all Intercompany Claims authorized under the Cash Management Order.

6.      "*Administrative Claims Bar Date*" means the deadline for Filing requests for payment of Administrative Claims other than those that accrued in the ordinary course of the Debtors' business, which such deadline: (a) with respect to General Administrative Claims other than those that were accrued in the ordinary course of business, shall be 30 days after the

Effective Date; and (b) with respect to Professional Fee Claims, shall be 60 days after the Effective Date.

7.      "*Affiliate*" has the meaning set forth in section 101(2) of the Bankruptcy Code. With respect to any Person that is not a Debtor, the term "Affiliate" shall apply to such Person as if such Person were a "debtor" for purposes of the definition in section 101(2) of the Bankruptcy Code.

8.      "*Allowed*" means with respect to any Claim or Interest, except as otherwise provided herein: (a) a Claim or Interest in a liquidated amount as to which no objection has been Filed prior to the Claims Objection Deadline and that is evidenced by a Proof of Claim or Interest, as applicable, timely Filed by the applicable Bar Date or that is not required to be evidenced by a Filed Proof of Claim or Interest, as applicable, under the Plan, the Bankruptcy Code, or a Final Order; (b) a Claim or Interest that is scheduled by the Debtors as neither disputed, contingent, nor unliquidated, and as for which no Proof of Claim or Interest, as applicable, has been timely Filed in an unliquidated or a different amount; or (c) a Claim or Interest that is upheld or otherwise allowed (i) under the Plan, (ii) in any stipulation that is approved by the Bankruptcy Court, (iii) under any contract, instrument, indenture, or other agreement entered into or assumed in connection herewith, or (iv) by Final Order (including any such Claim to which the Debtors had objected or which the Bankruptcy Court had disallowed prior to such Final Order); *provided*, that with respect to a Claim or Interest described in clauses (a) and (b) above, such Claim or Interest shall be considered Allowed only if and to the extent that with respect to such Claim or Interest no objection to the allowance thereof has been or, in the Debtors' or Reorganized Debtors' reasonable good faith judgment, may be interposed within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Court, or such an objection is so interposed and the Claim or Interest, as applicable, shall have been Allowed by a Final Order. Any Claim that has been or is hereafter listed in the Schedules as contingent, unliquidated, or disputed, and for which no Proof of Claim or Interest is or has been timely Filed, is not considered Allowed and shall be expunged without further action by the Debtors and without further notice to any party or action, approval, or order of the Court. Notwithstanding anything to the contrary herein, no Claim of any Entity subject to section 502(d) of the Bankruptcy Code shall be deemed Allowed unless and until such Entity pays in full the amount that it owes such Debtor or Reorganized Debtor, as applicable. For the avoidance of doubt, a Proof of Claim or Interest Filed after the Bar Date shall not be Allowed for any purposes whatsoever absent entry of a Final Order allowing such late-Filed Claim. "Allow" and "Allowing" shall have correlative meanings.

9.      "*Assumed Executory Contracts and Unexpired Leases*" means those Executory Contracts and Unexpired Leases to be assumed pursuant to the Plan by the applicable Reorganized Debtors, as set forth on the Assumed Executory Contract and Unexpired Lease List.

10.      "*Assumed Executory Contract and Unexpired Lease List*" means the list, as determined by the Debtors or the Reorganized Debtors, as applicable, of Executory Contracts and Unexpired Leases (with proposed cure amounts, if any) that will be assumed by the Reorganized Debtors, which list shall be included in the Plan Supplement; *provided*, that such list with respect to Executory Contracts and/or Unexpired Leases shall be in form and substance reasonably acceptable to the Consenting 2013 Loan Lender.

11.     "*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. §§ 101–1532, as amended.

12.     "*Bankruptcy Court*" means the United States Bankruptcy Court for the Southern District of Mississippi.

13.     "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure promulgated under section 2075 of the Judicial Code and the general, local, and chambers rules of the Bankruptcy Court, in each case as amended from time to time.

14.     "*Bar Date*" means the applicable dates established by which Proofs of Claim must be Filed under the *Notice of Chapter 11 Bankruptcy Case* (Dkt. # 86) and the substantially similar notices filed in each of the other Chapter 11 Cases.

15.     "*Business Day*" means any day other than a Saturday, Sunday, or other day on which commercial banks are authorized to close under the Laws of, or are in fact closed in, the state of Mississippi.

16.     "*Cash*" means the legal tender of the U.S. and equivalents thereof, including bank deposits, checks, and other similar items.

17.     "*Cash Collateral Order*" means the *Final Order Authorizing Debtors to Use Cash Collateral* (Dkt. # ●).

18.     "*Cash Management Order*" means the *Final Order Authorizing Debtors to Continue Their Existing Cash Management System and Maintain Existing Bank Accounts, and Continue Intercompany Arrangements* (Dkt. # ●).

19.     "*Causes of Action*" means any action, claim, cross-claim, third-party claim, cause of action, controversy, dispute, demand, right, lien, indemnity, contribution, guaranty, suit, obligation, liability, loss, debt, fee or expense, damage, interest, judgment, cost, account, defense, remedy, offset, power, privilege, proceeding, license, and franchise of any kind or character whatsoever, known, unknown, foreseen or unforeseen, existing or hereafter arising, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively (including any alter ego theories), whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity or under any other theory of law (including under any state or federal securities laws). For the avoidance of doubt, Cause of Action also includes (i) any right of setoff, counterclaim, or recoupment and any claim for breach of contract or for breach of duties imposed by law or in equity, (ii) the right to object to Claims or Interests, (iii) any claim under section 362 or chapter 5 of the Bankruptcy Code, (iv) any claim or defense including fraud, mistake, duress, and usury and any other defenses set forth in section 558 of the Bankruptcy Code, and (v) any state law fraudulent transfer claim.

20.     "*Chapter 11 Cases*" means, collectively: (a) when used with reference to a particular Debtor, the case pending for that Debtor under chapter 11 of the Bankruptcy Code in the Bankruptcy Court; and (b) when used with reference to all the Debtors, the jointly administered chapter 11 cases pending for the Debtors in the Bankruptcy Court.

21.     "*Claim*" means any claim, as defined in section 101(5) of the Bankruptcy Code, against any of the Debtors.

22.     "*Claims Objection Deadline*" means the later of: (a) the date that is 180 days after the Effective Date; and (b) such other date as may be fixed by the Bankruptcy Court, after notice and hearing, upon a motion Filed before the expiration of the deadline to object to Claims or Interests.

23.     "*Claims Register*" means the official register of Claims against the Debtors maintained by the Clerk of the Bankruptcy Court with respect to each Debtor.

24.     "*Class*" means any category of Claims against or Interests in the Debtors as classified by the Plan pursuant to section 1122(a) of the Bankruptcy Code.

25.     "*CM/ECF*" means the Bankruptcy Court's Case Management and Electronic Case Filing system.

26.     "*Confirmation*" means the Bankruptcy Court's entry of the Confirmation Order on the docket of the Chapter 11 Cases.

27.     "*Confirmation Date*" means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases, within the meaning of Bankruptcy Rules 5003 and 9021.

28.     "*Confirmation Hearing*" means the hearing held by the Bankruptcy Court to consider Confirmation of the Plan pursuant to Bankruptcy Rule 3020(b)(2) and sections 1128 and 1129 of the Bankruptcy Code, as such hearing may be, or may have been, continued from time to time.

29.     "*Confirmation Order*" means the order of the Bankruptcy Court confirming the Plan under section 1129 of the Bankruptcy Code in a form consistent with the rights of the parties to the RSA and in form and substance acceptable to the Consenting 2013 Loan Lender.

30.     "*Consenting 2013 Loan Lender*" means FSEP or beneficial holders of, or investment advisors, sub-advisors, or managers of discretionary accounts that hold, a 2013 Loan Claim that have executed and delivered counterpart signature pages to the RSA, a joinder to the RSA, or a transfer agreement to the RSA to counsel to the Debtors.

31.     "*Consenting 2013 Loan Lender Professionals*" means, collectively, (a) Davis Polk & Wardwell and Adams and Reese LLP, as legal counsel to the Consenting 2013 Loan Lender and (b) any other advisors providing advice to the Consenting 2013 Loan Lender in connection with the Chapter 11 Cases or in furtherance of the Plan.

32.     "*Consenting 2013 Loan Lender Restructuring Expenses*" means all unpaid and reasonable and documented and out-of-pocket expenses of the Consenting 2013 Loan Lender Professionals incurred in connection with the RSA, the Chapter 11 Cases or in furtherance of the Plan.

33.     "*Consummation*" means the occurrence of the Effective Date.

34.     "*Cure Claim*" means all amounts, including an amount of $0.00, required to cure any monetary defaults under any Executory Contract or Unexpired Lease (or such lesser amount as may be agreed upon by the parties under an Executory Contract or Unexpired Lease) that is to be assumed by the Debtors pursuant to sections 365 or 1123 of the Bankruptcy Code.

35.     "*Debtors*" means, collectively: Tenrgys, LLC; Acadiana Mineral Owners, LLC; Antioch Pipeline Company, LLC; BAX, LLC; BGGCO, LLC; BOE, LLC; BT Lands, LLC; BXO Lands, LLC; Cohay Conservation Area, LLC; Cohay Wildlife, LLC; Eutaw Ventures, LLC; Greenleaf CO2 Solutions, LLC; Highland Colony Capital, LLC; Jurassic Seismic Company; LASO, LLC; Leaf River Land Co., LLC; NOMS, LLC; North Cohay, LLC; PCE, LLC; RFND, LLC; RFS, LLC; SNPI, LLC; South Cohay, LLC; STP Ventures, LLC; Tallahala Exploration, LLC; TC Energy, LLC; Tellus Energy, LLC; Telpico USA, LLC; Top Ten Holdings, LLC; TPCO, LLC; Treetop Midstream Services, LLC; WCOA, LLC; WYC Lands, LLC; and Xlake Pipeline Company, LLC.

36.     "*Definitive Documents*" means (A) the Plan; (B) the Confirmation Order; (C) the Disclosure Statement; (D) any motion seeking approval of the Disclosure Statement and the Disclosure Statement Order, and the other Solicitation Materials; (E) the Exit Facility Documents; (F) any other material (with materiality determined in the reasonable discretion of the advisors to the Consenting 2013 Loan Lender in consultation with the Debtors' advisors) pleadings or material motions the Debtors plan to file in connection with the Chapter 11 Cases all orders sought pursuant thereto, including any and all motions filed to assume, assume and assign, or reject an executory contract or unexpired lease and the order or orders of the Bankruptcy Court approving such motions (for the avoidance of doubt, the following are not material pleadings or material motions: ministerial notices and similar ministerial documents; retention applications; fee applications; fee statements; any similar pleadings or motions relating to the retention or fees of any professional; statements of financial affairs and schedules of assets and liabilities), and all related documents, including, but not limited to and if applicable, exit financing documents, cash collateral orders and related budgets, and all related agreements, documents, exhibits, annexes and schedules thereto; (H) the Plan Supplement (and all documents comprising the Plan Supplement, including for the avoidance of doubt and without limitation the New Secured Term Loan Documents and the Reorganized Equity Documents); (I) such other agreements and documentation desired or necessary to consummate and document the transactions contemplated by the RSA; and (J) any management incentive plan and related documents or agreements, subject to the Consenting 2013 Loan Lender's consent rights as set forth in the RSA and the Plan.

37.     "*D&O Liability Insurance Policies*" means all insurance policies (including any "tail policy") of any of the Debtors (or the Debtors or the Reorganized Debtors, as applicable, to the extent such coverage applies to the Debtors) for current or former directors', managers', and officers' liability, in each case as existing as of the Petition Date.

38.     "*Disclosure Statement*" means the *Disclosure Statement for the Joint Chapter 11 Plan of Reorganization of Tenrgys, LLC and its Subsidiaries*, dated [September [__], 2021 (Dkt # __)], as may be amended, including all exhibits and schedules thereto, as approved by the Disclosure Statement Order.

39.     "*Disclosure Statement Order*" means the *Order (I) Approving the Adequacy of the Disclosure Statement, (II) Approving the Solicitation and Notice Procedures with Respect to Confirmation of the Debtors' Proposed Joint Plan of Reorganization, and (III) Scheduling Related Dates* (Dkt. # ___).

40.     "*Disputed*" means with regard to any Claim or Interest, a Claim or Interest that has not been Allowed but has not been disallowed pursuant to this Plan or a Final Order of the Bankruptcy Court or other court of competent jurisdiction.

41.     "*Distribution Record Date*" means the record date for purposes of making distributions under the Plan on account of Allowed Claims and Allowed Interests, which date shall be the date that is five (5) Business Days after the Confirmation Date or such other date as designated in a Final Order of the Bankruptcy Court.

42.     "*Effective Date*" means, with respect to the Plan and any such applicable Debtor(s), the date that is the first Business Day upon which: (a) no stay of the Confirmation Order is in effect; (b) all conditions precedent specified in Article IX.A and Article IX.B have been satisfied or waived (in accordance with Article IX.C); and (c) the Plan is declared effective with respect to such applicable Debtor(s).

43.     "*Entity*" has the meaning set forth in section 101(15) of the Bankruptcy Code.

44.     "*Estate*" means, as to each Debtor, the estate created for the Debtor in its Chapter 11 Case under section 541 of the Bankruptcy Code.

45.     "*Exchange Act*" means the Securities Exchange Act of 1934, as amended.

46.     "*Exculpated Parties*" means, collectively, and in each case in its capacity as such: (a) the Debtors; (b) the Reorganized Debtors; (c) the Consenting 2013 Loan Lender; (d) any statutory committee appointed in the Chapter 11 Cases and each of such committee's members; and (e) with respect to each of the foregoing Persons in clauses (a) through (d), such Person's affiliates; and (f) with respect to each of the foregoing Persons in clauses (a) through (e), such Person's Related Parties, in each case in their capacity as such.

47.     "*Executory Contract*" means a contract to which one or more of the Debtors is a party and that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code, including for the avoidance of doubt, the RSA.

48.     "*Existing Governance Documents*" means the Debtors' respective certificate of incorporation, certificate of formation, bylaws, charter, trust agreement, indenture, limited liability company agreement, partnership agreement, shareholder agreement and such other formation and constituent documents in effect prior to the Effective Date.

49.     "*Existing Tenrgys Equity Interests*" means, collectively, all Interests in Tenrgys and the other Debtors arising from or related to the LLC membership interests that existed immediately prior to the Petition Date.

50.     "*Exit Facility*" means that certain unsecured junior credit facility in an amount of up to $5 million to be provided by the Debtors' management to the Reorganized Debtors, as provided in Article IV.E.1 of the Plan and in the Exit Facility Documents. For the avoidance of doubt, the Exit Facility shall be subordinated in all respects to the New Secured Term Loan.

51.     "*Exit Facility Documents*" means, collectively, the agreements and related documents governing the Exit Facility, which documents shall be included in the Plan Supplement in form and substance reasonably acceptable to the Debtors and the Consenting 2013 Loan Lender.

52.     "*Federal Judgment Rate*" means the federal judgment rate in effect as of the Petition Date, compounded annually.

53.     "*File*," "*Filed*," or "*Filing*" means file, filed, or filing in the Chapter 11 Cases with the Bankruptcy Court or its authorized designee in the Chapter 11 Cases.

54.     "*Final Order*" means (i) an order, ruling or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter, which has not been reversed, stayed, modified, vacated, or amended as to which the time to appeal, or seek certiorari or move for a new trial, stay, reargument, reconsideration or rehearing has expired according to applicable law and no appeal or petition for certiorari or other proceedings for a new trial, stay, reargument, reconsideration or rehearing has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be timely Filed has been withdrawn or resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought or the new trial, stay, reargument, reconsideration or rehearing shall have been denied, resulted in no stay pending appeal of such order, or has otherwise been dismissed with prejudice; provided, however, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed relating to such order shall not prevent such order from being a Final Order.

55.     "*FS Energy*" means FS Energy and Power Fund.

56.     "*FSEP*" means FSEP Investments, Inc., a Delaware corporation.

57.     "*General Administrative Claim*" means any Administrative Claim, other than a Professional Fee Claim.

58.     "*General Unsecured Claim*" means any Claim against a Debtor that is not an Administrative Claim, Priority Tax Claim, Other Priority Claim, Other Secured Claim, 2012 RBL Facility Claim, or 2013 Loan Claim.

59.     "*Governing Body*" means the manager, board of directors, board of managers, general partner, investment committee, special committee, or such similar governing body of an Entity (including the manager and board of Tenrgys and any other Debtor).

60.     "*Governmental Unit*" has the meaning set forth in section 101(27) of the Bankruptcy Code.

61.    "*Holder*" means an Entity holding a Claim or an Interest, as applicable.

62.    "*Impaired*" means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is impaired within the meaning of section 1124 of the Bankruptcy Code.

63.    "*Indemnification Obligations*" means each of the Debtors' obligations existing immediately prior to the Effective Date, whether in the Existing Governance Documents or otherwise, to indemnify the current and former officers, directors, managers, members, agents, or employees, in each case solely in their capacity as such.

64.    "*Insurance Policies*" means any insurance policies, insurance settlement agreements, coverage-in-place agreements, or other agreements relating to the provision of insurance entered into by or issued to or for the benefit of any of the Debtors or their predecessors.

65.    "*Intercompany Claim*" means any Claim other than a TOG Claim held by a Debtor or a non-Debtor Affiliate of a Debtor on the one hand, against a Debtor or a non-Debtor Affiliate of a Debtor on the other hand.

66.    "*Intercompany Interest*" means an Interest in a Debtor held by a Debtor or a non-Debtor Affiliate of a Debtor.

67.    "*Interest*" means any equity interest (as defined in section 101(16) of the Bankruptcy Code) in any Debtor, including the Existing Tenrgys Equity Interests, all ordinary shares, units, common stock, preferred stock, membership interest, partnership interest or other instrument, evidencing any fixed or contingent ownership interest in a Debtor, whether or not transferable, including any option, warrant, or other right, contractual or otherwise, to acquire any such interest, that existed immediately before the Effective Date.

68.    "*Interim Compensation Order*" means the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals* (Dkt. # ___)

69.    "*Interior*" means the United States Department of the Interior.

70.    "*Internal Revenue Code*" means the Internal Revenue Code of 1986, as amended.

71.    "*Investment Company Act*" means the Investment Company Act of 1940, as amended.

72.    "*IRS*" means the Internal Revenue Service.

73.    "*Judicial Code*" means title 28 of the United States Code, 28 U.S.C. §§ 1–4001.

74.    "*Law*" means any federal, state, local, or foreign law (including common law), statute, code, ordinance, rule, regulation, order, ruling, or judgment, in each case, that is validly adopted, promulgated, issued, or entered by a governmental authority of competent jurisdiction (including the Bankruptcy Court).

75.    "*Lien*" has the meaning set forth in section 101(37) of the Bankruptcy Code.

76.     "*New Reorganized Tenrgys Membership Interests*" means (a) the new limited liability company units representing a membership interest equal to 10.00% of the equity in the Reorganized Tenrgys, which shall be issued and distributed solely to the Consenting 2013 Loan Lender under and in accordance with the Plan and (b) any Existing Tenrgys Equity Interests that are reinstated pursuant to the Plan (as such Existing Tenrgys Equity Interests may be modified pursuant to the Reorganized Equity Documents).

77.     "*New Secured Term Loan*" means the new $40 million floating rate first-lien term loan to be issued to the Consenting 2013 Loan Lender on the Effective Date, as described in more detail in Article III.B.42(iii) of the Plan, and otherwise on terms set forth in the RSA and RSA Financing Term Sheet and in each case acceptable to the Consenting 2013 Loan Lender, and as set forth in the Plan Supplement.

78.     "*New Secured Term Loan Documents*" shall mean any and all documentation necessary to effectuate the incurrence of the New Secured Term Loan to be received by the Consenting 2013 Loan Lender under the Plan, and which shall be consistent with the RSA and otherwise acceptable to the Consenting 2013 Loan Lender.

79.     "*Other Priority Claims*" means any Claim against a Debtor, other than an Administrative Claim or a Priority Tax Claim, entitled to priority in right of payment under section 507(a) of the Bankruptcy Code.

80.     "*Other Secured Claims*" means any Secured Claim against a Debtor other than the Secured 2012 RBL Facility Claims.

81.     "*Person*" has the meaning set forth in section 101(41) of the Bankruptcy Code.

82.     "*Petition Date*" means September 17, 2021, the date on which the Debtors commenced the Chapter 11 Cases.

83.     "*Plan Supplement*" means the compilation of documents and forms of documents, agreements, schedules, and exhibits to the Plan (in each case, as may be altered, amended, modified or supplemented from time to time in accordance with the terms of the RSA (including the consent rights set forth therein), to be Filed by the Debtors no later than 7 days before the Confirmation Hearing or such later date as may be approved by the Bankruptcy Court on notice to parties in interest, and additional documents Filed before the Effective Date as amendments to the Plan Supplement, including without limitation the following: (a) the Assumed Executory Contract and Unexpired Lease List; (b) the Rejected Executory Contract and Unexpired Lease List; (c) the Schedule of Retained Causes of Action; (d) the New Secured Term Loan Documents; (e) the Reorganized Equity Documents, and (f) the Exit Facility Documents. Any reference to the Plan Supplement in the Plan shall include each of the documents identified above as (a) through (f), as applicable. Any and all Plan Supplement documents shall be in form and substance reasonably acceptable to the Consenting 2013 Loan Lender (other than the Reorganized Tenrgys LLC Agreement, if any, and the New Secured Term Loan Documents, which shall be in form and substance acceptable to the Consenting 2013 Term Loan Lender).

84.     "*Priority Tax Claim*" means the Claims of Governmental Units of the type specified in section 507(a)(8) of the Bankruptcy Code.

85.    "*Pro Rata*" means, with respect to an Allowed Claim, the percentage represented by a fraction (i) the numerator of which shall be an amount equal to such Claim and (ii) the denominator of which shall be an amount equal to the aggregate amount of Allowed and estimated Claims in the same Class as such Claim, except in cases where Pro Rata is used in reference to multiple Classes, in which case Pro Rata means the portion that such Holder's Claim in a particular class bears to the aggregate amount of all Allowed and estimated Claims in such multiple Classes.

86.    "*Professional*" means an Entity: (a) retained under a Bankruptcy Court order in accordance with sections 327, 363, or 1103 of the Bankruptcy Code and to be compensated for services rendered before or on the Confirmation Date, under sections 327, 328, 329, 330, 331, and 363 of the Bankruptcy Code; or (b) awarded compensation and reimbursement by the Bankruptcy Court under section 503(b)(4) of the Bankruptcy Code.

87.    "*Professional Fee Claims*" means all Administrative Claims for the compensation of Professionals and the reimbursement of expenses incurred by such Professionals through and including the Effective Date to the extent such fees and expenses have not been paid under the Interim Compensation Order or any other order of the Bankruptcy Court. To the extent the Bankruptcy Court denies or reduces by a Final Order any amount of a Professional's requested fees and expenses, then the amount by which such fees or expenses are reduced or denied shall reduce the applicable Professional Fee Claim.

88.    "*Proof of Claim*" means a proof of Claim Filed against any of the Debtors in the Chapter 11 Cases.

89.    "*Reinstate*," "*Reinstated*," or "*Reinstatement*" means with respect to Claims and Interests, that the Claim or Interest shall be rendered unimpaired, including without limitation through the payment of fees and expenses due in the ordinary course, for purposes of section 1124 of the Bankruptcy Code.

90.    "*Rejected Executory Contract and Unexpired Lease List*" means the list, as determined by the Debtors or the Reorganized Debtors, as applicable, of Executory Contracts and Unexpired Leases that will be rejected by the Reorganized Debtors under the Plan, which list shall be included in the Plan Supplement; *provided*, that such list with respect to Executory Contracts and/or Unexpired Leases shall be in form and substance reasonably acceptable to the Consenting 2013 Loan Lender.

91.    "*Related Parties*" means, collectively, each of, and in each case in its capacity as such, current and former directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, managed accounts or funds, predecessors, participants, successors, assigns, subsidiaries, partners, limited partners, general partners, principals, members, management companies, fund advisors or managers, employees, agents, trustees, advisory board members, financial advisors, attorneys (including any other attorneys or professionals retained by any current or former director or manager in his or her capacity as director or manager of an Entity), accountants, investment bankers, consultants, representatives, and other professionals and advisors and any such person's or Entity's respective heirs, executors, estates, and nominees.

92. "*Released Parties*" means, collectively, (a) the Debtors, (b) the Reorganized Debtors, (c) the Consenting 2013 Loan Lender, (d) any Releasing Party, (e) with respect to each of the foregoing Persons, in clauses (a) through (d), each of their affiliates, and (f) with respect to each of the foregoing Persons in clauses (a) through (e), such Person's Related Parties, in each case in their capacity as such; *provided* that any Holder of a Claim or Interest that validly opts out of the releases contained in the Plan or validly objects to the releases contained in the Plan and subjection is not resolved by the entry of the Confirmation Order shall not be a "Released Party."

93. "*Releasing Parties*" means, collectively, (a) the holders of all Claims or Interests who vote to accept the Plan, (b) the holders of all Claims or Interests whose vote to accept or reject the Plan is solicited but who do not vote either to accept or to reject the Plan, (c) the holders of all Claims or Interests who vote, or are deemed, to reject the Plan but do not opt out of granting the releases set forth therein, (d) the holders of all Claims and Interests who were given notice of the opportunity to opt out of granting the releases set forth therein but did not opt out, (e) all other holders of Claims and Interests to the maximum extent permitted by law, (f) the Consenting 2013 Loan Lender, (f) with respect to each of the foregoing Persons, in clauses (a) through (e), each of their affiliates, and (g) with respect to each of the foregoing Persons in clauses (a) through (f), such Person's Related Parties, in each case in their capacity as such; *provided* that any Holder of a Claim or Interest that validly opts out of the releases contained in the Plan or validly objects to the releases contained in the Plan and such objection is not resolved by the entry of the Confirmation Order shall not be a "Releasing Party."

94. "*Reorganized*" means, as to any Debtor or Debtors, such Debtor(s) as reorganized under the Plan or any successor thereto, by merger, consolidation, taxable disposition, or otherwise, on or after the Effective Date.

95. "*Reorganized Debtor*" means each Debtor, as reorganized under the Plan, or any successor or assign thereto, by merger, amalgamation, consolidation, or otherwise, on or after the Effective Date.

96. "*Reorganized Equity*" means all the Interests in the Debtors.

97. "*Reorganized Equity Documents*" means the limited liability company agreements and other corporate documentation for each of the Debtors, including the Reorganized Tenrgys LLC Agreement, certificates of incorporation, certificates of formations, bylaws, charters, trust agreements, indentures, partnership agreements, any shareholders' agreements, and any and all documentation to implement, issue, and distribute the new equity of the Reorganized Debtors, which shall be individually and collectively be in form and substance acceptable to the Consenting 2013 Loan Lender.

98. "*Reorganized Tenrgys Board*" means the board of directors or managers of Reorganized Tenrgys on and after the Effective Date.

99. "*Reorganized Tenrgys LLC Agreement*" means the existing limited liability company agreement of Tenrgys, or, if required to implement the Restructuring Transactions, an amended and restated limited liability company agreement, and other Reorganized Equity

Documents for Reorganized Tenrgys, in each case subject to the consent rights of the Consenting 2013 Loan Lender set forth in the RSA.

100.     "*Restructuring Transactions*" means, collectively, those mergers, amalgamations, consolidations, arrangements, continuances, restructurings, transfers, conversions, dispositions, liquidations, dissolutions, or other corporate transactions that the Debtors and the Consenting 2013 Loan Lender reasonably determine to be necessary or desirable to implement the Plan with respect to the Debtors, on the terms set forth in the Plan and the RSA and subject to the consent and approval rights of the Consenting 2013 Loan Lender as set forth herein or therein.

101.     "*Royalty and Working Interests*" means the working interests granting the right to exploit oil and gas, and certain other royalty or mineral interests, including but not limited to, landowner's royalty interests, overriding royalty interests, net profit interests, non-participating royalty interests, and production payments.

102.     "*RSA*" means that certain *Restructuring Support and Lock-Up Agreement*, dated as of September 16, 2021, by and among the Consenting 2013 Loan Lender and the Debtors, as may be amended, restated, or supplemented from time to time, including for the avoidance of doubt any exhibits (including term sheets) thereto.

103.     "*Schedules*" means the schedules of assets and liabilities, schedules of Executory Contracts or Unexpired Leases, and statement of financial affairs Filed by the Debtors under section 521 of the Bankruptcy Code, the official bankruptcy forms, and the Bankruptcy Rules.

104.     "*Schedule of Retained Causes of Action*" means the schedule of certain Causes of Action of the Debtors that are not released, waived, or transferred pursuant to the Plan, as the same may be amended, modified, or supplemented from time to time.

105.     "*SEC*" means the Securities and Exchange Commission.

106.     "*Secured Claim*" means a Claim (a) secured by a valid, perfected, and enforceable Lien on collateral to the extent of the value of such collateral, as determined in accordance with section 506(a) of the Bankruptcy Code or (b) subject to a valid right of setoff pursuant to section 553 of the Bankruptcy Code.

107.     "*Secured 2012 RBL Facility Claims*" means any Claims on account of or arising under the 2012 RBL Facility.

108.     "*Securities Act*" means the Securities Act of 1933, 15 U.S.C. §§ 77a–77aa, as amended, together with the rules and regulations promulgated thereunder.

109.     "*Security*" or "*Securities*" has the meaning set forth in section 2(a)(1) of the Securities Act.

110.     "*TOG*" means Tellus Operating Group, LLC.

111.     "*TOG Claim*" means any Claim held by TOG against any Debtor that is not an Administrative Claim or an Other Secured Claim.

112.   "*Unexpired Lease*" means a lease to which one or more of the Debtors is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

113.   "*Unimpaired*" means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

114.   "*U.S.*" means the United States of America.

115.   "*U.S. Trustee*" means the Office of the U.S. Trustee Region 7 for the Southern District of Texas.

## B.   Rules of Interpretation.

For the purposes of the Plan: (1) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (2) unless otherwise specified, any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (3) unless otherwise specified, any reference herein to an existing document, schedule, or exhibit, whether or not Filed, having been Filed or to be Filed shall mean that document, schedule, or exhibit, as it may thereafter be amended, modified, or supplemented; (4) any reference to an Entity as a Holder of a Claim or Interest includes that Entity's successors and assigns; (5) unless otherwise specified, all references herein to "Articles" or "ARTICLES" are references to Articles hereof or hereto; (6) unless otherwise specified, all references herein to exhibits are references to exhibits in the Plan Supplement; (7) unless otherwise specified, the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (8) subject to the provisions of any contract, certificate of incorporation, or similar formation document or agreement, by-law, instrument, release, or other agreement or document entered into in connection with the Plan, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with the applicable federal law, including the Bankruptcy Code and Bankruptcy Rules; (9) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (10) unless otherwise specified herein, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (11) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be; (12) all references to docket numbers of documents Filed in the Chapter 11 Cases are references to the docket numbers under the Bankruptcy Court's CM/ECF system; (13) all references to statutes, regulations, orders, rules of courts, and the like shall mean as amended from time to time, and as applicable to the Chapter 11 Cases, unless otherwise stated; (14) the words "include" and "including," and variations thereof, shall not be deemed to be terms of limitation, and shall be deemed to be followed by the words "without limitation"; (15) any immaterial effectuating provisions may be interpreted by the Reorganized Debtors in such a manner that is consistent with the overall purpose and intent of the Plan all without further notice to or action, order, or approval of the Bankruptcy Court or

any other Entity; and (16) except as otherwise specifically provided in the Plan to the contrary, references in the Plan to the Debtors or to the Reorganized Debtors shall mean the Debtors and the Reorganized Debtors, as applicable, to the extent the context requires.

## C.      Computation of Time.

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein. If the date on which a transaction may occur under the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day. Any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable after the Effective Date.

## D.      Governing Law.

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of New York or, to the extent agreed by the Consenting 2013 Loan Lender, Mississippi, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control); *provided, however*, that corporate governance matters relating to the Debtors or the Reorganized Debtors, as applicable, shall be governed by the laws of the state of incorporation or formation of the relevant Debtor or Reorganized Debtor, as applicable.

## E.      Reference to Monetary Figures.

All references in the Plan to monetary figures shall refer to currency of the U.S., unless otherwise expressly provided.

## F.      Consultation, Information, Notice, and Consent Rights

Notwithstanding anything herein to the contrary, any and all consultation, information, notice, consent, and approval rights (collectively, the "Consent Rights") of the parties to the RSA as set forth therein (including all exhibits thereto) with respect to the form and substance of this Plan, all exhibits to the Plan, the Plan Supplement, and all other Definitive Documents, including any amendments, restatements, supplements, or other modifications to such agreements and documents, and any consents, waivers, or other deviations under or from any such documents, shall be incorporated herein by this reference and fully enforceable as if state in full herein.

## G.      Conflicts.

In the event of an inconsistency between the Plan and the Disclosure Statement, the terms of the Plan shall control in all respects. In the event of an inconsistency between the Plan and the Plan Supplement or the Definitive Documents, including the schedules or exhibits, the terms of the relevant provision in the Plan Supplement or the Definitive Documents shall control (unless stated otherwise in such Plan Supplement document, other Definitive Documents or in the Confirmation Order). In the event of an inconsistency between the Plan or any Definitive

Documents or other documents, schedules, or exhibits contained in the Plan Supplement, on the one hand, and the Confirmation Order, on the other hand, the Confirmation Order shall control.

## ARTICLE II.
## ADMINISTRATIVE CLAIMS AND PRIORITY TAX CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims have not been classified and, thus, are excluded from the Classes of Claims and Interests.

**A.    Administrative Claims.**

1.    General Administrative Claims.

Except as specified in this Article II, unless the Holder of an Allowed General Administrative Claim and the Debtors or the Reorganized Debtors, as applicable, agree to less favorable treatment, each Holder of an Allowed General Administrative Claim will receive, in full satisfaction of its General Administrative Claim, Cash equal to the amount of such Allowed General Administrative Claim either: (a) on the Effective Date; (b) if the General Administrative Claim is not Allowed as of the Effective Date, [120] days after the date on which an order allowing such General Administrative Claim becomes a Final Order, or as soon thereafter as reasonably practicable; or (c) if the Allowed General Administrative Claim is based on a liability incurred by the Debtors in the ordinary course of their business after the Petition Date, under the terms and conditions of the particular transaction or agreement giving rise to such Allowed General Administrative Claim, without any further action by the Holders of such Allowed General Administrative Claim, and without any further notice to or action, order, or approval of the Bankruptcy Court. Notwithstanding the foregoing, no request for payment of a General Administrative Claim need be Filed with respect to a General Administrative Claim previously Allowed by Final Order.

Except for Claims of Professionals, requests for payment of General Administrative Claims that were not accrued in the ordinary course of business must be Filed and served on the Debtors or the Reorganized Debtors, as applicable, no later than the Administrative Claims Bar Date applicable to the Debtor against whom the General Administrative Claim is asserted in accordance with the procedures specified in the Confirmation Order and the notice of the Effective Date. Holders of General Administrative Claims that are required to File and serve a request for payment of such General Administrative Claims by the Administrative Claims Bar Date that do not File and serve such a request by the Administrative Claims Bar Date shall be forever barred, estopped, and enjoined from asserting such General Administrative Claims against the Debtors, the Reorganized Debtors, or their respective property and such General Administrative Claims shall be deemed forever discharged and released as of the Effective Date. Any requests for payment of General Administrative Claims that are not properly Filed and served by the Administrative Claims Bar Date shall not appear on the Claims Register and shall be disallowed automatically without the need for further action by the Debtors or the Reorganized Debtors or further order of the Bankruptcy Court. To the extent this Article II.A.1 conflicts with Article XII.C of the Plan with respect to fees and expenses payable under section 1930(a) of the Judicial Code, including fees and expenses payable to the U.S. Trustee, Article XII.C of the Plan shall govern.

The Reorganized Debtors, in their sole and absolute discretion, may settle General Administrative Claims in the ordinary course of business without further Bankruptcy Court approval. The Debtors may also choose to object to any Administrative Claim no later than [120] days from the Administrative Claims Bar Date, subject to extensions by the Bankruptcy Court, agreement in writing of the parties, or on motion of a party in interest approved by the Bankruptcy Court. Unless the Debtors or the Reorganized Debtors (or other party with standing) object to a timely filed and properly served Administrative Claim, such Administrative Claim will be deemed Allowed in the amount requested. If the Debtors or the Reorganized Debtors object to an Administrative Claim, the parties may confer to try to reach a settlement and, failing that, the Bankruptcy Court will determine whether such Administrative Claim should be allowed and, if so, in what amount.

        2.       Professional Compensation.

        (a)     *Final Fee Applications.*

All final requests for payment of Professional Fee Claims, including the Professional Fee Claims incurred during the period from the Petition Date through the Effective Date, must be Filed and served on the Reorganized Debtors no later than 60 days after the Effective Date. All such final requests will be subject to approval by the Bankruptcy Court after notice and a hearing in accordance with the procedures established by the Bankruptcy Code and prior orders of the Bankruptcy Court in the Chapter 11 Cases, including the Interim Compensation Order, and once approved by the Bankruptcy Court, promptly paid up to its full Allowed amount. Any remaining unpaid Allowed Professional Fee Claims will be paid directly by the Reorganized Debtors in the manner prescribed by Article II.A.2(b) of the Plan.

        (b)     *Post-Confirmation Date Fees and Expenses.*

Except as otherwise specifically provided in the Plan, from and after the Confirmation Date, the Debtors shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable and documented legal, professional, or other fees and expenses incurred by the Debtors. Upon the Confirmation Date, any requirement that Professionals comply with sections 327 through 331 and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Reorganized Debtors may employ and pay any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

**B.      Priority Tax Claims.**

Except to the extent that a Holder of an Allowed Priority Tax Claim has been paid by the Debtors before the Effective Date, or the applicable Reorganized Debtors and such Holder agree to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Priority Tax Claim, each Holder of such Allowed Priority Tax Claim shall receive, at the option of the Debtors, one of the following treatments: (i) Cash in an amount equal to the amount of such Allowed Priority Tax Claim within five (5) Business Days after the Effective Date; (ii) Cash in an aggregate amount of such Allowed Priority Tax Claim payable in regular installments over a period not to exceed five (5) years after the Petition Date,

pursuant to section 1129(a)(9)(C) of the Bankruptcy Code and; or (iii) such other treatment as may be agreed upon by such Holder and the Debtors or otherwise determined upon an order of the Bankruptcy Court. The Reorganized Debtors shall have the right, in their sole discretion, to pay any Holders of Allowed Priority Tax Claims or any remaining balance of an Allowed Priority Tax Claim (together with accrued but unpaid interest) in full at any time on or after the Effective Date without premium or penalty.

## C.    Statutory Fees.

All fees due and payable under section 1930 of Title 28 of the United States Code before the Effective Date with respect to the Debtors shall be paid by the Debtors. On and after the Effective Date, the Reorganized Debtors shall pay any and all such fees when due and payable, and shall File with the Bankruptcy Court quarterly reports in a form reasonably acceptable to the U.S. Trustee. Each Debtor shall remain obligated to pay quarterly fees to the U.S. Trustee until the earliest of that particular Debtor's case being closed, dismissed, or converted to a case under Chapter 7 of the Bankruptcy Code.

## ARTICLE III.
## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

## A.    Classification of Claims and Interests.

Claims and Interests, except for Administrative Claims and Priority Tax Claims, are classified in the Classes set forth in this Article III. A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest qualifies within the description of such other Classes. A Claim or Interest is also classified in a particular Class for the purpose of receiving distributions under the Plan only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and has not been paid, released, or otherwise satisfied before the Effective Date. The Debtors reserve the right to assert that the treatment provided to Holders of Claims and Interests under Article III.B of the Plan renders such Holders Unimpaired.

The Plan constitutes a separate chapter 11 plan of reorganization for each Debtor, which shall include the classifications set forth below. Subject to Article III.D of the Plan, to the extent that a Class contains Claims or Interests only with respect to one or more particular Debtors, such Class applies solely to such Debtor.

The following chart represents the classification of Claims and Interests for the Debtors under the Plan.

| Class | Claims and Interests | Status | Voting Rights |
|:-----:|:---------------------|:------:|:--------------|
| 1 | Secured 2012 RBL Facility Claims | Impaired | Entitled to Vote |
| 2 | Other Secured Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| 3 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| 4 | Unsecured 2013 Loan Claims | Impaired | Entitled to Vote |
| 5 | General Unsecured Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| 6 | TOG Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| 7 | Intercompany Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| 8 | Intercompany Interests in the Debtors | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| 9 | Existing Tenrgys Equity Interests | Impaired | Entitled to Vote |

**B.       Treatment of Claims and Interests.**

To the extent a Class contains Allowed Claims or Allowed Interests with respect to any Debtor, the classification of Allowed Claims and Allowed Interests is specified below.

1.       Class 1 – Secured 2012 RBL Facility Claims.

(a)       *Classification*: Class 1 consists of Secured 2012 RBL Facility Claims.

(b)       *Treatment*: On the Effective Date, or as soon as reasonably practicable thereafter, except to the extent that the Holder of the Allowed Secured 2012 RBL Facility Claims agrees to a less favorable treatment of its Allowed Claim, in full and final satisfaction, settlement, release, and discharge of and in exchange for the Allowed Secured 2012 RBL Facility Claims, the Debtors shall:

(i)       convey, transfer, or otherwise assign all of the Debtors' right, title, and interest in and to the Telpico Entities to the Holder of the Allowed Secured 2012 RBL Facility Claims; or

(ii)       alternatively, at the option of the Holder, cause the Telpico Entities to convey, transfer, or otherwise assign all of the Telpico Entities' right, title, and interest in and to and the Colombian Assets to the Holder of the Allowed Secured 2012 RBL Facility Claims.

(c)       *Voting:* Class 1 is Impaired under the Plan. Holders of Claims in Class 1 are entitled to vote to accept or reject the Plan.

2.       Class 2 – Other Secured Claims

(a)       *Classification*: Class 2 consists of Other Secured Claims.

(b)   *Treatment*: On the Effective Date, or as soon as reasonably practicable thereafter, except to the extent that the Holder of the Allowed Secured Claim agrees to a less favorable treatment of its Allowed Claim, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Other Secured Claim, each such Holder shall receive, at the option of the applicable Debtor(s) with the consent of the Consenting 2013 Loan Lender, either:

     (i)   Payment in full in cash;

     (ii)   Delivery of collateral securing any such Claim and payment of any interest required under section 506(b) of the Bankruptcy Code;

     (iii)   Reinstatement of such Allowed Other Secured Claim; or

     (iv)   Such other treatment rendering its Allowed Other Secured Claim Unimpaired in accordance with section 1124 of the Bankruptcy Code.

(c)   *Voting:* Class 2 is Unimpaired under the Plan. Holders of Allowed Other Secured Claims are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code. Holders of Allowed Other Secured Claims are not entitled to vote to accept or reject the Plan.

3.   Class 3 – Other Priority Claims.

(a)   *Classification*: Class 3 consists of Other Priority Claims.

(b)   *Treatment*: On the Effective Date, or as soon as reasonably practicable thereafter, except to the extent that a Holder of an Allowed Other Priority Claim agrees to a less favorable treatment of its Allowed Claim, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Other Priority Claim, each such Holder shall receive, at the Debtors' option, either:

     (v)   payment in full in Cash; or

     (vi)   other treatment rendering such Claim Unimpaired.

(c)   *Voting*: Class 3 is Unimpaired under the Plan. Holders of Other Priority Claims are conclusively deemed to have accepted the Plan under section 1126(f) of the Bankruptcy Code. Therefore, such Holders are not entitled to vote to accept or reject the Plan.

4.   Class 4 – 2013 Loan Claims.

1.   *Classification:* Class 4 consists of 2013 Loan Claims.

2.     *Treatment*: On the Effective Date, except to the extent that the Consenting 2013 Loan Lender as the Holder of the Allowed 2013 Loan Claims agrees to a less favorable treatment of its Allowed Claims, in full and final satisfaction, settlement, release, and discharge of and in exchange for all of the Allowed 2013 Loan Claims, the Consenting 2013 Loan Lender shall receive:

(i)     Payment of the sum of Five Hundred Thousand Dollars ($500,000.00) in Cash;

(ii)    New Reorganized Tenrgys Membership Interests equal to ten percent (10.00%) of the equity in the Reorganized Tenrgys; and

(iii)   The New Secured Term Loan, which shall be a new $40 million floating rate first-lien term loan with market pricing (but with an interest rate of L+650 with a LIBOR floor of 1% if paid in cash, or L+850 with a LIBOR floor of 1% if paid in kind), and other market terms to be agreed and set forth in the New Secured Term Loan Documents, consistent with the RSA, as and with such other terms as are in form and substance acceptable to the Consenting 2013 Loan Lender, and as set forth herein, including:

- **Facility Type**: First-lien term loan

- **Term**: Four (4) years

- **Amortization**: 10% annually, remaining principal due at maturity

- **Collateral**: First lien on and security interest in all assets, including for the avoidance of doubt any equity interests of Reorganized Tenrgys and its subsidiaries, and accounts of Reorganized Tenrgys and its subsidiaries, including all oil and gas leases, midstream assets, and related infrastructure

- **Prepayment**: No Call -year 1; 101 -year 2; par thereafter

- **Permitted Indebtedness**: No additional permitted debt at Issuer other than the Exit Facility and a $10 million super priority 1st Lien facility allowed for purposes of equally and ratably secured hedging transactions, the posting of letters of credit, and working capital needs

- **Other Terms**: Other conditions to closing, reps and warranties, events of default, affirmative and negative covenants, and other terms that are usual, customary, and

appropriate for transactions of this nature, including financial covenants

3.  *Voting*: Class 4 is Impaired under the Plan. Holders of Claims in Class 3 are entitled to vote to accept or reject the Plan.

5.  Class 5 – General Unsecured Claims.

(a)  *Classification*: Class 5 consists of General Unsecured Claims.

(d)  *Treatment*: On the Effective Date or the date that is ten (10) Business Days after the date on which such General Unsecured Claim becomes an Allowed General Unsecured Claim, whichever is later, in each case, or as soon as reasonably practicable thereafter, except to the extent that a Holder of an Allowed General Unsecured Claim agrees to a less favorable treatment of its Allowed Claim, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed General Unsecured Claim, each such Holder shall receive, at the Debtors' option, either:

(i)  payment in full in Cash;

(ii)  Reinstatement of such Claim; or

(iii)  other treatment rendering such Claim Unimpaired.

(b)  *Voting:* Class 5 is Unimpaired under the Plan. Holders of General Unsecured Claims are conclusively deemed to have accepted the Plan under section 1126(f) of the Bankruptcy Code. Therefore, such Holders are not entitled to vote to accept or reject the Plan.

6.  Class 6 – TOG Claims.

(a)  *Classification*: Class 6 consists of TOG Claims.

(b)  *Treatment*: On the Effective Date, or as soon as reasonably practicable thereafter, except to the extent that TOG agrees to a less favorable treatment of its Allowed TOG Claim, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed TOG Claim, TOG shall be, at the Debtors' option subject to the consent of the Consenting 2013 Loan Lender, either Reinstated, adjusted or discharged.

(c)  *Voting:* Class 6 is Unimpaired under the Plan. TOG is conclusively deemed to have accepted the Plan under section 1126(f) of the Bankruptcy Code. Therefore, TOG is not entitled to vote to accept or reject the Plan.

7.      Class 7 – Intercompany Claims.

    (a)      *Classification*: Class 7 consists of Intercompany Claims.

    (d)      *Treatment*: On the Effective Date, or as soon as reasonably practicable thereafter, except to the extent that a Holder of an Allowed Intercompany Claim agrees to a less favorable treatment of its Allowed Claim, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Intercompany Claim, each such Holder shall receive, at the Debtors' option, either:

        (i)      payment in full in Cash;

        (ii)      Reinstatement of such Claim; or

        (iii)      other treatment rendering such Claim Unimpaired.

    (e)      *Voting:* Class 7 is Unimpaired under the Plan. Holders of Intercompany Claims are conclusively deemed to have accepted the Plan under section 1126(f) of the Bankruptcy Code. Therefore, such Holders are not entitled to vote to accept or reject the Plan.

8.      Class 8 – Intercompany Interests in the Debtors.

    (a)      *Classification*: Class 8 consists of Intercompany Interests.

    (b)      *Treatment*: This Plan leaves unaltered the legal, equitable, and contractual rights to which an Intercompany Interest entitles the Holder of such Interest.

    (c)      *Voting*: Class 8 is Unimpaired under the Plan. Holders of Intercompany Interests are conclusively deemed to have accepted the Plan under section 1126(f) of the Bankruptcy Code. Therefore, such Holders are not entitled to vote to accept or reject the Plan.

9.      Class 9 – Existing Tenrgys Equity Interests.

    (d)      *Classification*: Class 9 consists of all Existing Tenrgys Equity Interests.

    (e)      *Treatment*: On the Effective Date, each Holder of an Allowed Existing Tenrgys Equity Interest on account of such Interest shall receive or retain such Holder's Pro Rata share of 100% of the Reorganized Equity Interests, subject to dilution by the Reorganized Equity Interests to be received by the Holder of the 2013 Loan Claim.

    4.      *Voting*: Class 9 is Impaired under the Plan. Holders of Claims in Class 9 are entitled to vote to accept or reject the Plan.

**C.      Special Provision Governing Unimpaired Claims.**

Except as otherwise provided in the Plan, nothing under the Plan shall affect the Debtors' rights in respect of any Unimpaired Claims, including all rights in respect of legal and equitable defenses to or setoffs or recoupments against any such Unimpaired Claims.

**D.      Elimination of Vacant Classes.**

Any Class of Claims or Interests that, as of the commencement of the Confirmation Hearing, does not have at least one Holder of a Claim or Interest that is Allowed in an amount greater than zero for voting purposes under the Disclosure Statement Order shall be considered vacant, deemed eliminated from the Plan for purposes of voting to accept or reject the Plan, and disregarded for purposes of determining whether the Plan satisfies section 1129(a)(8) of the Bankruptcy Code with respect to that Class.

**E.      Confirmation Under Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code.**

Section 1129(a)(10) of the Bankruptcy Code shall be satisfied for purposes of Confirmation by acceptance of the Plan by one or more of the Classes entitled to vote under Article III.B of the Plan. The Debtors shall seek Confirmation of the Plan under section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Interests. The Debtors reserve the right to modify the Plan in accordance with Article X hereof to the extent, if any, that Confirmation under section 1129(b) of the Bankruptcy Code requires modification, including by modifying the treatment applicable to a Class of Claims to render such Class of Claims Unimpaired to the extent permitted by the Bankruptcy Code and the Bankruptcy Rules or to withdraw the Plan as to such Debtor.

**F.      Voting Classes; Presumed Acceptance by Non-Voting Classes**

If a Class contains Holders of Claims or Interests eligible to vote and no Holders of Claims or Interests eligible to vote in such Class vote to accept or reject the Plan, the Plan shall be presumed accepted by the Holders of such Claims or Interests in such Class.

**G.      Presumed Acceptance and Rejection of the Plan**

To the extent that Claims of any class are canceled, each Holder of a Claim in such class is deemed to have rejected the Plan under section 1126(g) of the Bankruptcy Code and is not entitled to vote to accept or reject the Plan. To the extent that Claims or Interests of any Class are Reinstated, each Holder of a Claim or Interest in such Class is presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code and is not entitled to vote to accept or reject the Plan.

**H.      Controversy Concerning Impairment.**

If a controversy arises as to whether any Claims or Interests, or any Class of Claims or Interests, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

## I.     Subordinated Claims and Interests.

The allowance, classification, and treatment of all Allowed Claims and Allowed Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise. Under section 510 of the Bankruptcy Code, the Debtors or Reorganized Debtors reserve the right to re-classify any Allowed Claim in accordance with any contractual, legal, or equitable subordination relating thereto. Notwithstanding anything in this Plan to the contrary, the 2013 Loan Claims shall not be subordinated in any manner or for any reason.

## ARTICLE IV.
## MEANS FOR IMPLEMENTATION OF THE PLAN

### A.     Restructuring Support Agreement

The RSA shall be assumed pursuant to the Confirmation Order and the Debtors shall continue to perform thereunder and comply therewith in all respects during the period through and including the Effective Date.

### B.     General Settlement of Claims and Interests

Unless otherwise set forth in the Plan, pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan constitute a good faith compromise and settlement of all Claims and Interests and controversies resolved pursuant to the Plan.

### C.     Restructuring Transactions.

On the Effective Date, the Debtors or the Reorganized Debtors will (as agreed to by the Consenting 2013 Term Loan Lender and consistent with the terms of the RSA) effectuate the Restructuring Transactions, and will take any actions as may be necessary or advisable to that end, including: (a) the execution and delivery of appropriate agreements or other documents of merger, amalgamation, consolidation, restructuring, conversion, disposition, transfer, arrangement, continuance, dissolution, sale, purchase, or liquidation containing terms that are consistent with the terms of the Plan and the RSA and that satisfy the requirements of applicable law and any other terms to which the applicable Entities may agree, including the formation of the entity or entities that will comprise the Reorganized Debtors; (b) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of the Plan and having other terms for which the applicable parties agree; (c) the filing of appropriate certificates or articles of incorporation, formation, reincorporation, merger, consolidation, conversion, amalgamation, arrangement, continuance, dissolution, or other organizational documents under applicable state law; (d) the execution and delivery of the Reorganized Equity Documents, if any; (e) the execution and delivery of the Exit Facility Documents (including all actions to be taken, undertakings to be made, obligations to be incurred and fees and expenses to be paid by the

Debtors and the Reorganized Debtors, as applicable) and the New Secured Term Loan Documents (including all actions to be taken, undertakings to be made, obligations to be incurred and fees and expenses to be paid by the Debtors and the Reorganized Debtors, as applicable), subject to any post-closing execution and delivery periods provided for in the Exit Facility Documents and the New Secured Term Loan Documents; (f) the issuance of the New Reorganized Tenrgys Membership Interests as set forth in the Plan; (g) the assignment of the Telpico equity interests or the conveyance of the Colombian Assets as set forth in the Plan; and (h) all other actions that the Debtors and the Consenting 2013 Loan Lender determine to be necessary or advisable, including making filings or recordings that may be required by law in connection with the Plan.

The Confirmation Order shall and shall be deemed to, under sections 1123 and 363 of the Bankruptcy Code and Bankruptcy Rule 9019, authorize, among other things, all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan, including the Restructuring Transactions.

## D.    Cancellation of Existing Liens and Agreements

On the Effective Date, except to the extent otherwise provided in the Plan or the Confirmation Order, all notes, instruments, certificates, credit agreements, indentures, mortgages, deeds of trust, security agreements, and other documents evidencing Claims or Liens shall be cancelled and the obligations of the Debtors thereunder or in any way related thereto shall be deemed satisfied in full, cancelled, discharged, and of no force or effect. Holders of or parties to such cancelled instruments and other documentation will have no rights arising from or relating to such instruments and other documentation, or the cancellation thereof, except the rights provided for pursuant to this Plan. Notwithstanding anything to the contrary herein, to the extent cancelled pursuant to this paragraph, the 2013 Loan Agreement shall continue in effect solely to the extent necessary to: (1) permit the Holder of Claims under the 2013 Loan Agreement to receive their respective Plan Distributions; and (2) permit the Reorganized Debtors to make Plan Distributions on account of the Allowed Claims under the 2013 Loan Agreement. To the extent cancelled in accordance with this paragraph, the commitments and obligations (if any) of the Holder of the 2013 Loan Claims under the 2013 Loan Agreement to extend any further or future credit or financial accommodations to any of the Debtors, any of their respective subsidiaries or any of their respective successors or assigns under the 2013 Loan Agreement shall fully terminate and be of no further force or effect on the Effective Date.

## E.    Sources of Consideration for Plan Distributions.

The Debtors shall fund distributions under the Plan with one or more of the following, subject to appropriate definitive agreements and documentation: (1) the Exit Facility; (2) the Colombian Collateral Tender Transaction; (3) the New Secured Term Loan; (4) the New Reorganized Tenrgys Membership Interests; and (5) encumbered and unencumbered Cash on hand, including Cash from operations of the Debtors. Each distribution and issuance referred to in Article VI of the Plan shall be governed by the terms and conditions set forth herein applicable to such distribution or issuance and by the terms and conditions of the instruments or other documents evidencing or relating to such distribution or issuance, which terms and conditions shall bind each Entity receiving such distribution or issuance. The issuance, distribution, or

authorization, of the New Reorganized Tenrgys Membership Interests will be exempt from SEC registration to the fullest extent permitted by law, as described more fully in Article VI.D below.

      1.      Exit Facility.

On the Effective Date, the Reorganized Debtors shall enter into the Exit Facility of up to $5 million, with members of the Debtors' management as lender, Reorganized Tenrgys as borrower, and the other Debtors as guarantors. The Exit Facility shall be on terms mutually agreed between the Debtors and the Consenting 2013 Loan Lender, and set forth in the Exit Facility Documents, which shall be in a form and substance acceptable to the Debtors and the Consenting 2013 Loan Lender. In any event, the Exit Facility will be subordinate to the New Secured Term Loan.

Confirmation shall be deemed approval of the Exit Facility (including the transactions contemplated thereby, and all actions to be taken, undertakings to be made, and obligations to be incurred and fees and expenses to be paid by the Debtors or the Reorganized Debtors in connection therewith), to the extent not previously approved by the Bankruptcy Court, and the Reorganized Debtors shall be authorized to execute and deliver those documents necessary or appropriate to obtain the Exit Facility, including any and all documents required to enter into the Exit Facility and all collateral documents related thereto (if any), without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or vote, consent, authorization, or approval of any Person, subject to such modifications as the Reorganized Debtors may deem to be necessary to consummate entry into the Exit Facility and that are in form and substance reasonably acceptable to the Reorganized Debtors and the Consenting 2013 Loan Lender.

On the Effective Date, the Exit Facility Documents shall constitute legal, valid, binding, and authorized obligations of the Reorganized Debtors, enforceable in accordance with their terms. The financial accommodations to be extended under the Exit Facility Documents are being extended, and shall be deemed to have been extended, in good faith, for legitimate business purposes, are reasonable, shall not be subject to avoidance, recharacterization, or subordination (including equitable subordination) for any purposes whatsoever, and shall not constitute preferential transfers, fraudulent conveyances, or other voidable transfers under the Bankruptcy Code or any other applicable non-bankruptcy law. On the Effective Date, all of the Liens and security interests to be granted in accordance with the Exit Facility Documents, if any, (a) shall be legal, binding, and enforceable Liens on, and security interests in, the collateral granted thereunder in accordance with the terms of the Exit Facility Documents, (b) shall be deemed automatically attached and perfected on the Effective Date, subject only to such Liens and security interests as may be granted in the New Secured Term Loan Documents, or permitted under the Exit Facility Documents, and (c) shall not be subject to avoidance, recharacterization, or subordination (including equitable subordination) for any purposes whatsoever and shall not constitute preferential transfers, fraudulent conveyances, or other voidable transfers under the Bankruptcy Code or any applicable non-bankruptcy law. The Reorganized Debtors and the lender(s) under the Exit Facility granted such Liens and security interests are authorized to make all filings and recordings, and to obtain all governmental approvals and consents necessary to establish, attach, and perfect such Liens and security interests under the provisions of the applicable state, provincial, federal, or other law (whether domestic or foreign) that would be

applicable in the absence of the Plan and the Confirmation Order (it being understood that perfection shall occur automatically by virtue of the entry of the Confirmation Order, and any such filings, recordings, approvals, and consents shall not be required), and will thereafter cooperate to make all other filings and recordings that otherwise would be necessary or desirable by the administrative agent under the Exit Facility under applicable law to give notice of such Liens and security interests to third parties.

2.      Colombian Collateral Tender Transaction.

Reorganized Tenrgys shall be authorized to cause Reorganized Tellus Energy to assign, convey, or otherwise transfer all of the membership interests in Telpico, LLC to PanAm under Article III.B of the Plan, in accordance with the Reorganized Equity Documents.

Alternatively, at PanAm's election, the Reorganized Debtors shall be authorized to cause Telpico, LLC to assign, convey, or otherwise transfer substantially all of its assets to PanAm under Article III.B of the Plan.

3.      New Secured Term Loan.

On the Effective Date, the Reorganized Debtors shall issue the New Secured Term Loan to the Consenting 2013 Loan Lender on the terms set forth in the New Secured Term Loan Documents.

Confirmation of the Plan shall be deemed (a) approval of the New Secured Term Loan and all transactions contemplated hereby and thereby, and all actions to be taken, undertakings to be made, and obligations to be incurred by the Reorganized Debtors in connection therewith, including the payment of all fees, expenses, losses, damages, indemnities and other amounts provided for by the New Secured Term Loan Documents, and (b) authorization for the Reorganized Debtors to enter into and perform under the New Secured Term Loan Documents.

On the Effective Date, the New Secured Term Loan Documents shall constitute legal, valid, binding, and authorized obligations of the Reorganized Debtors, enforceable in accordance with their terms. The financial accommodations to be extended under the New Secured Term Loan Documents are being extended, and shall be deemed to have been extended, in good faith, for legitimate business purposes, are reasonable, shall not be subject to avoidance, recharacterization, or subordination (including equitable subordination) for any purposes whatsoever, and shall not constitute preferential transfers, fraudulent conveyances, or other voidable transfers under the Bankruptcy Code or any other applicable non-bankruptcy law. On the Effective Date, all of the Liens and security interests to be granted in accordance with the New Secured Term Loan Documents (a) shall be deemed to be approved; (b) shall be legal, binding, and enforceable Liens on, and security interests in, the collateral granted thereunder in accordance with the terms of the New Secured Term Loan Documents, (c) shall be deemed automatically attached and perfected on the Effective Date, subject only to such Liens and security interests as may be permitted under the New Secured Term Loan Documents, and (d) shall not be subject to avoidance, recharacterization, or subordination (including equitable subordination) for any purposes whatsoever and shall not constitute preferential transfers, fraudulent conveyances, or other voidable transfers under the Bankruptcy Code or any applicable non-bankruptcy law. The Reorganized Debtors and the Consenting 2013 Loan Lender

are authorized to make all filings and recordings, and to obtain all governmental approvals and consents necessary to establish, attach, and perfect such Liens and security interests under the provisions of the applicable state, provincial, federal, or other law (whether domestic or foreign) that would be applicable in the absence of the Plan and the Confirmation Order (it being understood that perfection of the Liens and security interests granted under the New Secured Term Loan Documents shall occur automatically by virtue of the entry of the Confirmation Order and funding on or after the Effective Date, and any such filings, recordings, approvals, and consents shall not be required), and will thereafter cooperate to make all other filings and recordings that otherwise would be necessary under applicable law to give notice of such Liens and security interests to third parties. To the extent that any Holder of a Secured Claim that has been satisfied or discharged pursuant to the Plan, or any agent for such Holder, has filed or recorded any Liens and/or security interests to secure such Holder's Secured Claim, then as soon as practicable on or after the Effective Date, such Holder (or the agent for such Holder), at the Reorganized Debtors' expense, shall take any and all steps requested by the Debtors, the Reorganized Debtors or any administrative agent under the New Secured Term Loan Documents that are necessary to cancel and/or extinguish such Liens and/or security interests (it being understood that such Liens and security interests held by Holders of Secured Claims that are satisfied on the Effective Date pursuant to the Plan shall be automatically canceled/or extinguished automatically on the Effective Date by virtue of the entry of the Confirmation Order).

4.   New Reorganized Tenrgys Membership Interests.

Reorganized Tenrgys shall be authorized to issue the New Reorganized Tenrgys Membership Interests to the Consenting 2013 Loan Lender under Article III.B of the Plan and in accordance with the Reorganized Equity Documents. All of the New Reorganized Tenrgys Membership Interests issued under the Plan shall be duly authorized, validly issued, fully paid, and non-assessable.

**F.    Corporate Existence.**

Except as otherwise provided in the Plan, each Debtor shall continue to exist after the Effective Date as a separate corporate Entity, limited liability company, partnership, or other form, as the case may be, with all the powers of a corporation, limited liability company, partnership, or other form, as the case may be, under the applicable law in the jurisdiction in which each applicable Debtor is incorporated or formed and under the respective Existing Equity Documents, except to the extent such Existing Equity Documents are amended under the Plan or otherwise, and to the extent such documents are amended, such documents are deemed to be amended under the Plan and require no further action or approval (other than any requisite filings required under applicable state or federal law).

**G.    Vesting of Assets in the Reorganized Debtors.**

Except as otherwise provided in the Plan, the RSA, or any applicable Definitive Document, on the Effective Date, all property in each Estate, all Causes of Action, and any property acquired by any of the Debtors under the Plan shall vest in each applicable Reorganized Debtor, free and clear of all Liens, Claims, charges, Interests, or other encumbrances, other than Liens to be granted under the Plan. Except as otherwise provided in the Plan, on and after the

Effective Date, each of the Reorganized Debtors may operate their business and may use, acquire, or dispose of property and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code, Bankruptcy Rules or other restrictions expressly imposed by the Plan, RSA, Definitive Documents or Confirmation Order.

## H.    Corporate Action.

On the Effective Date, all actions contemplated under the Plan with respect to the applicable Debtor or Reorganized Debtor, as applicable, shall be deemed authorized and approved in all respects, including: (1) implementation of the Restructuring Transactions; (2) selection of, and the election or appointment (as applicable) of, the directors and officers for Reorganized Tenrgys; (3) approval and adoption of (and, as applicable, the execution, delivery, and filing of) the Reorganized Equity Documents; (4) the execution and delivery of the Exit Facility Documents and the New Secured Term Loan Documents; (5) the issuance and delivery of the New Reorganized Tenrgys Membership Interests; and (6) all other actions contemplated under the Plan (whether to occur before, on, or after the Effective Date). All matters provided for herein involving the corporate structure of the Debtors or the Reorganized Debtors, as applicable, and any corporate action, authorization, or approval that would otherwise be required by the Debtors or the Reorganized Debtors in connection with the Plan shall be deemed to have occurred or to have been obtained and shall be in effect as of the Effective Date, without any requirement of further action, authorization, or approval by the Bankruptcy Court, security holders, directors, managers, or officers of the Debtors or the Reorganized Debtors or any other person.

On or before the Effective Date, the appropriate officers of the Debtors and the Reorganized Debtors shall be authorized and, as applicable, directed to issue, execute, and deliver the agreements, documents, securities, and instruments, and take such actions, contemplated under the Plan (or necessary or desirable to effect the transactions contemplated under the Plan) in the name of and on behalf of the Reorganized Debtors, as applicable, including the Exit Facility Documents, the New Secured Term Loan Documents, the New Reorganized Tenrgys Membership Interests, and any and all other agreements, documents, securities, and instruments relating to the foregoing, and all such documents shall be deemed ratified. The authorizations and approvals contemplated by this Article IV.H shall be effective notwithstanding any requirements under non-bankruptcy law.

## I.    Reorganized Equity Documents.

The Existing Governance Documents of the Debtors in effect prior to the Effective Date shall be (a) Reinstated, or (b) amended or restated and replaced by the Reorganized Equity Documents on or prior to the Effective Date, subject in each case to such consent rights of the Consenting 2013 Loan Lender as set forth in the RSA and the Plan. Solely to the extent (a) required under the Plan, the Bankruptcy Code, or applicable non-bankruptcy law; or (b) necessary to effectuate the transactions contemplated by the Plan, on or immediately prior to the Effective Date:

1.    The Reorganized Debtors shall file the Reorganized Equity Documents (in a manner acceptable to the Consenting 2013 Loan Lender and consistent with the

RSA and the Plan) with the applicable Secretary of State and/or other applicable authorities in the state of incorporation or formation or otherwise (as the case may be) in accordance with the applicable federal laws or state laws of the respective state; and

2.  The Reorganized Equity Documents shall be deemed to be (a) amended, restated and replaced or (b) Reinstated, as applicable, pursuant to the Plan and shall require no further action or approval (other than any requisite filings required under applicable non-bankruptcy law).

After the Effective Date, the Reorganized Debtors may amend and restate their Reorganized Equity Documents subject to the consent rights set forth therein, and may file such documents as permitted by the laws of the respective states without further authorization from the Bankruptcy Court.

**J.      Directors and Officers of the Reorganized Debtors.**

As of the Effective Date, the terms of the current members of the Board of Directors of Tenrgys shall expire, and the terms of the directors, and the initial Reorganized Tenrgys Board shall be constituted and will include:

**Reorganized Tenrgys Manager and Director**
Richard H. Mills, Jr.

**Reorganized Tenrgys Board of Directors**
Robert Roy Ward
Catherine C. Wohner
Walter P. Neely
Hans H. Krause
James R. McBride
James "Bobo" Clarke (alternate)

**Manager of Reorganized Debtors (other than Jurassic Seismic Company)**
Richard H. Mills, Jr.

**Reorganized Jurassic Seismic Company Board of Directors**
Richard H. Mills, Jr.
Mike Pumphrey
Thomas E. Wofford

**President of Reorganized Jurassic Seismic Company**
Michael Mills

After the Effective Date, the officers of each of the Reorganized Debtors shall be appointed in accordance with the respective Reorganized Equity Documents. Under section 1129(a)(5) of the Bankruptcy Code, the Debtors will disclose in the Plan Supplement the identity and affiliations of each person proposed to be an officer or to serve on the initial board of directors of any of the Reorganized Debtors. To the extent any such director or officer of the

Reorganized Debtors is an "insider" under the Bankruptcy Code, the Debtors also will disclose the nature of any compensation to be paid to such director or officer. Each such director and officer shall serve from and after the Effective Date under the terms of the Reorganized Equity Documents.

## K.    Section 1146 Exemption.

To the fullest extent permitted by section 1146 of the Bankruptcy Code, any transfers of property under, in contemplation of, or in connection with, the Plan, including (1) the Restructuring Transactions; (2) the Exit Facility; (3) the New Secured Term Loan; (4) the Colombian Collateral Tender Transaction; (5) the issuance and delivery of the New Reorganized Tenrgys Membership Interests; (6) the assignment or surrender of any lease or sublease; and (7) the delivery of any deed or other instrument or transfer order, in furtherance of, or in connection with the Plan, including any deeds, bills of sale, or assignments executed in connection with any disposition or transfer of assets contemplated under the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer, mortgage recording tax, or other similar tax, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents in connection with such transfers or property without the payment of any such tax, recordation fee, or governmental assessment. All filing or recording officers (or any other Person with authority over any of the foregoing), wherever located and by whomever appointed, shall comply with the requirements of section 1146(a) of the Bankruptcy Code, shall forego the collection of any such tax or governmental assessment, and shall accept for filing and recordation any of the foregoing instruments or other documents without payment of any such tax or governmental assessment.

## L.    SEC Reporting Requirements.

The Debtors shall comply with all applicable reporting requirements under the Exchange Act, if any.

## M.    Director, Officer, Manager, and Employee Liability Insurance.

After the Effective Date, the Reorganized Debtors will not terminate or otherwise reduce the coverage under any directors' and officers' insurance policies (including any "tail policy") in effect or purchased as of the Petition Date, and all members, managers, directors, and officers of the Debtors who served in such capacity at any time prior to the Effective Date or any other individuals covered by such insurance policies, will be entitled to the full benefits of any such policy for the full term of such policy regardless of whether such members, managers, directors, officers, or other individuals remain in such positions after the Effective Date.

## N.    Employee Obligations of Treetop Midstream Services, LLC.

Except as otherwise provided in the Plan or the Plan Supplement, the Reorganized Treetop Midstream Services, LLC shall honor Treetop Midstream Services, LLC's written contracts, agreements, policies, programs and plans for, among other things, wages, salaries, reimbursement obligations, health benefits, insurance benefits, short- and long-term disability

coverage, and other such employee benefits (including any compensation programs approved by the Bankruptcy Court); *provided*, that the consummation of the transactions contemplated herein shall not constitute a "change in control" with respect to any of the foregoing arrangements. To the extent that the above-listed contracts, agreements, policies, programs and plans are executory contracts, under sections 365 and 1123 of the Bankruptcy Code, each of them will be deemed assumed as of the Effective Date and assigned to the Reorganized Treetop Midstream Services, LLC.

## O.   Effectuating Documents; Further Transactions

On and after the Effective Date, the Reorganized Debtors, and their respective officers and the Reorganized Tenrgys Board, are authorized to and may issue, execute, deliver, file, or record such contracts, Securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan and the Securities authorized and/or issued, as applicable, under the Plan, in the name of and on behalf of the Reorganized Tenrgys without the need for any approvals, authorization, or consents.

## P.   Payment of Fees and Expenses of Certain Creditors

The Debtors and the Reorganized Debtors, as applicable, shall, on and after the Confirmation Date and to the extent invoiced, pay the Consenting 2013 Loan Lender Restructuring Expenses (whether accrued prepetition or postpetition and to the extent not otherwise paid prior to or during the Chapter 11 Cases), without the need for application by any such parties to the Bankruptcy Court, and without notice and a hearing pursuant to section 1129(a)(4) of the Bankruptcy Code or otherwise.

## Q.   Preservation of Causes of Action.

Except as otherwise provided herein, in accordance with section 1123(b) of the Bankruptcy Code, but subject to Article VIII of the Plan, the Reorganized Debtors shall retain (or shall receive from the Debtors, as applicable) and may enforce all rights to commence and pursue any and all Causes of Action belonging to their Estates, whether arising before or after the Petition Date, including any actions specifically enumerated in the Plan Supplement and the Schedule of Retained Causes of Action, and the Reorganized Debtors' rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date, other than the Causes of Action released by the Debtors under the releases and exculpations contained in the Plan, including in Article VIII.

The Reorganized Debtors may pursue such Causes of Action, as appropriate, in accordance with the best interests of the Reorganized Debtors. **No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action against it as any indication that the Debtors or the Reorganized Debtors, as applicable, will not pursue any and all available Causes of Action against it. The Debtors and the Reorganized Debtors expressly reserve all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided in the Plan, including Article VIII hereof. Unless otherwise agreed upon in writing by the parties to the applicable Cause of Action, all objections to the**

**Schedule of Retained Causes of Action must be Filed with the Bankruptcy Court on or before thirty (30) days after the Effective Date. Any such objection that is not timely filed shall be disallowed and forever barred, estopped, and enjoined from assertion against any Reorganized Debtor, without the need for any objection or responsive pleading by the Reorganized Debtors or any other party in interest or any further notice to or action, order, or approval of the Bankruptcy Court.** Unless any Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled herein or in a Bankruptcy Court order, the Reorganized Debtors expressly reserve all Causes of Action, for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of Confirmation or Consummation; *provided, however*, that in no event shall any Cause of Action against the Consenting 2013 Loan Lender be preserved.

The Reorganized Debtors reserve and shall retain the Causes of Action notwithstanding the rejection of any Executory Contract or Unexpired Lease during the Chapter 11 Cases or under the Plan. In accordance with section 1123(b)(3) of the Bankruptcy Code, any Causes of Action that a Debtor may hold against any Entity shall vest in the Reorganized Debtors. The Reorganized Debtors shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court.

## R.      Preservation of Royalty and Working Interests

Notwithstanding any other provision in the Plan, on and after the Effective Date, all Royalty and Working Interests shall be preserved and remain in full force and effect in accordance with the terms of the granting instruments or other governing documents applicable to such Royalty and Working Interests, and no Royalty and Working Interests shall be compromised or discharged by the Plan. For the avoidance of doubt and notwithstanding anything to the contrary in the preceding sentence, any right to payment arising from a Royalty and Working Interest, if any, shall be treated as a General Unsecured Claim under this Plan and shall be subject to any discharge and/or release provided hereunder.

## ARTICLE V.
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

## A.      Assumption and Rejection of Executory Contracts and Unexpired Leases.

On the Effective Date, except as otherwise provided herein, all Executory Contracts or Unexpired Leases of the Debtors, not previously assumed or rejected under an order of the Bankruptcy Court, will be deemed to be Assumed Executory Contracts or Unexpired Leases, in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, other than those Executory Contracts or Unexpired Leases that: (1) previously were assumed or rejected by the Debtors; (2) are identified on the Rejected Executory Contract and Unexpired Lease List; (3) are the subject of a motion to reject Executory Contracts or Unexpired Leases that is pending on the Confirmation Date; or (4) are subject to a motion to reject an

Executory Contract or Unexpired Lease under which the requested effective date of such rejection is after the Effective Date; *provided*, that the Debtors or the Reorganized Debtors, as applicable, may not assume or reject any Executory Contract or Unexpired Lease without the prior written consent of the Consenting 2013 Loan Lender (which consent shall not be unreasonably withheld); *provided*, *further*, that following the request for consent by the Debtors or Reorganized Debtors, if the consent of the Consenting 2013 Loan Lender is not obtained or declined within five (5) Business Days following written request thereof by the Debtors or Reorganized Debtors, such consent shall be deemed to have been granted by the Consenting 2013 Loan Lender.

Entry of the Confirmation Order by the Bankruptcy Court shall constitute a court order approving the assumptions, assumptions and assignments, or rejections of the Executory Contracts or Unexpired Leases as set forth in the Plan, the Rejected Executory Contract and Unexpired Lease List, or the Assumed Executory Contract and Unexpired Lease List under sections 365(a) and 1123 of the Bankruptcy Code. Any motions to assume Executory Contracts or Unexpired Leases pending on the Effective Date shall be subject to approval by the Bankruptcy Court on or after the Effective Date by a Final Order. Each Executory Contract and Unexpired Lease assumed under this Article V.A or by any order of the Bankruptcy Court, which has not been assigned to a third party before the Confirmation Date, shall revest in and be fully enforceable by the Reorganized Debtors in accordance with its terms, except as such terms are modified by the Plan or any order of the Bankruptcy Court authorizing and providing for its assumption under applicable federal law. Notwithstanding anything this Article V.A. to the contrary, the Reorganized Tenrgys Employment Agreements shall be deemed to be entered into or assumed and/or assigned to Reorganized Tenrgys on the Effective Date, and Reorganized Tenrgys shall be responsible for any cure costs arising from or related to the assumption of such Reorganized Tenrgys Employment Agreements. Notwithstanding anything to the contrary in the Plan, the Debtors or the Reorganized Debtors, as applicable, reserve the right to alter, amend, modify, or supplement the Rejected Executory Contract and Unexpired Lease List and the Assumed Executory Contract and Unexpired Lease List at any time through and including 30 days after the Effective Date, subject to any consent right of the Consenting 2013 Loan Lender, as applicable, as set forth in the Plan.

To the maximum extent permitted by law, to the extent that any provision in any Executory Contract or Unexpired Lease assumed or assumed and assigned pursuant to the Plan restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the assumption or assumption and assignment of such Executory Contract or Unexpired Lease (including any "change of control" or similar provision), then such provision shall be deemed modified such that the transactions contemplated by the Plan shall not entitle the non-Debtor party thereto to terminate such Executory Contract or Unexpired Lease or to exercise any other default-related rights with respect thereto.

## B.    Claims Based on Rejection of Executory Contracts or Unexpired Leases.

Unless otherwise provided by a Final Order of the Bankruptcy Court, all Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, under the Plan or the Confirmation Order, if any, must be Filed within 30 days after the later of: (1) the date of entry of an order of the Bankruptcy Court (including the Confirmation Order)

approving such rejection; and (2) the effective date of such rejection. **Any Claims arising from the rejection of an Executory Contract or Unexpired Lease not Filed within such time will be automatically disallowed, forever barred from assertion, and shall not be enforceable against the Debtors, Reorganized Debtors, Reorganized Tenrgys, the Estates, or their property without the need for any objection by Reorganized Tenrgys or further notice to, or action, order, or approval of the Bankruptcy Court or any other Entity, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully satisfied, released, and discharged, notwithstanding anything in the Schedules or a Proof of Claim to the contrary.** All Allowed Claims arising from the rejection of the Debtors' Executory Contracts or Unexpired Leases shall be classified as General Unsecured Claims against the applicable Debtor and shall be treated in accordance with the Plan, unless a different security or priority is otherwise asserted in such Proof of Claim and Allowed in accordance with Article VII of the Plan.

**C.      Cure of Defaults for Assumed Executory Contracts and Unexpired Leases.**

Any monetary defaults under each Assumed Executory Contract or Unexpired Lease shall be satisfied, under section 365(b)(1) of the Bankruptcy Code, by payment of the default amount in Cash on the Effective Date, or as soon as reasonably practicable thereafter, subject to the limitation described below, or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree. In the event of a dispute regarding (1) the amount of any payments to cure such a default, (2) the ability of the Reorganized Debtors or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed, or (3) any other matter pertaining to assumption, the cure payments required by section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a Final Order resolving the dispute and approving the assumption.

At least fourteen (14) days before the Confirmation Hearing, the Debtors will provide for notices of proposed assumption and proposed cure amounts to be sent to applicable third parties and for procedures for objecting thereto and resolution of disputes by the Bankruptcy Court. Any objection by a counterparty to an Executory Contract or Unexpired Lease to a proposed assumption or related cure amount must be Filed, served, and actually received by the Debtors at least seven (7) days before the Confirmation Hearing. Any counterparty to an Executory Contract or Unexpired Lease that fails to object timely to the proposed assumption or cure amount will be deemed to have consented to such assumption or proposed cure amount.

If the Bankruptcy Court determines that the Allowed Cure Claim with respect to any Executory Contract or Unexpired Lease is greater than the amount set forth in the applicable Cure Notice, the Debtors or Reorganized Debtors, as applicable, may add such Executory Contract or Unexpired Lease to the Schedule of Rejected Executory Contracts and Unexpired Leases, in which case such Executory Contract or Unexpired Lease will be deemed rejected as the Effective Date.

Assumption of any Executory Contract or Unexpired Lease shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other

bankruptcy-related defaults, arising under any Assumed Executory Contract or Unexpired Lease at any time before the effective date of assumption. **Any Proofs of Claim Filed with respect to an Assumed Executory Contract or Unexpired Lease shall be deemed disallowed and expunged, without further notice to or action, order, or approval of the Bankruptcy Court.**

**D.    Preexisting Obligations to the Debtors under Executory Contracts and Unexpired Leases.**

Rejection of any Executory Contract or Unexpired Lease under the Plan or otherwise shall not constitute a termination of preexisting obligations owed by the Executory Contract or Unexpired Lease counterparty or counterparties to the Debtors or the Reorganized Debtors, as applicable, under such Executory Contracts or Unexpired Leases. In particular, notwithstanding any non-bankruptcy law to the contrary, the Reorganized Debtors expressly reserve and do not waive any right to receive, or any continuing obligation of a counterparty to provide, warranties or continued maintenance obligations with respect to goods previously purchased by the Debtors pursuant to rejected Executory Contracts or Unexpired Leases.

**E.    Indemnification Obligations.**

All Indemnification Obligations will not be discharged or impaired by confirmation of the Plan. All such Indemnifications Obligations will be assumed by the Debtors under the Plan (and shall be treated as Executory Contracts being assumed under the Plan, to the extent applicable) and will continue as obligations of the Reorganized Debtors. Any Claim based on a Debtor's obligations thereunder will be an Allowed Claim; provided, however, that the Reorganized Debtors shall not indemnify officers, directors, managers, employees, attorneys, accountants, investment bankers, or other professionals of the Debtors for any Claims or Causes of Action arising out of or relating to any act or omission that is a criminal act or constitutes intentional fraud, gross negligence, or willful misconduct.

For the avoidance of doubt, the Plan, the Confirmation Order, and the Reorganized Equity Documents (in the event the Reorganized Equity Documents amend or restate the existing equity documents of any Debtor) will provide that the Consenting 2013 Loan Lender (including in its capacity as a holder of the New Secured Term Loan or the equity of any Reorganized Debtor) shall have no liability for any Indemnification Obligations.

**F.    Insurance Policies.**

Each of the Debtors' Insurance Policies is treated as an Executory Contract under the Plan. Unless otherwise provided in the Plan, on the Effective Date, the Debtors shall be deemed to have assumed all insurance policies and any agreements, documents, and instruments relating to coverage of all insured Claims, such Insurance Policies shall not be impaired in any way by the Plan or Confirmation Order, but rather will remain valid and enforceable in accordance with their terms, and such Insurance Policies and any agreements, documents or instruments relating thereto shall revest in the Reorganized Debtors.

## G. Modifications, Amendments, Supplements, Restatements, or Other Agreements.

Unless otherwise provided in the Plan or the Confirmation Order, each Executory Contract or Unexpired Lease that is assumed shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and all Executory Contracts and Unexpired Leases related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements have been previously rejected or repudiated or is rejected or repudiated under the Plan.

Unless otherwise provided herein or in the applicable Executory Contract or Unexpired Lease (as may have been amended, modified, supplemented, or restated), modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

## H. Reservation of Rights.

Neither the exclusion nor inclusion of any Executory Contract or Unexpired Lease on the Rejected Executory Contract and Unexpired Lease List, nor anything contained in the Plan, shall constitute an admission by the Debtors that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that any of the Reorganized Debtors has any liability thereunder. If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors or the Reorganized Debtors, as applicable, shall have thirty (30) days following entry of a Final Order resolving such dispute to alter its treatment of such contract or lease.

## I. Nonoccurrence of Effective Date.

In the event that the Effective Date does not occur with respect to a Debtor, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting Unexpired Leases with respect to such Debtor under section 365(d)(4) of the Bankruptcy Code, unless such deadline(s) have expired.

## J. Contracts and Leases Entered Into After the Petition Date.

Contracts and leases entered into after the Petition Date by any Debtor, including any Assumed Executory Contracts or Unexpired Leases, will be performed by the applicable Debtor or the applicable Reorganized Debtor liable thereunder in the ordinary course of its business. Accordingly, any such contracts and leases (including any Assumed Executory Contracts or Unexpired Leases) that have not been rejected as of the date of the Confirmation Date shall survive and remain unaffected by entry of the Confirmation Order.

## ARTICLE VI.
## PROVISIONS GOVERNING DISTRIBUTIONS

**A.      Timing and Calculation of Amounts to Be Distributed.**

Unless otherwise provided in the Plan, on the Effective Date (or if a Claim is not an Allowed Claim on the Effective Date, on the date that is ten (10) Business Days after the date on which such Claim becomes an Allowed Claim, or as soon as reasonably practicable thereafter), each Holder of an Allowed Claim shall receive the full amount of the distributions that the Plan provides for Allowed Claims in the applicable Class, unless the Debtors elect to Reinstate such Allowed Claim. In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date. If and to the extent that there are Disputed Claims, distributions on account of any such Disputed Claims shall be made in accordance with this paragraph only when and to the extent such Disputed Claims become Allowed Claims.

**B.      Delivery of Distributions and Undeliverable or Unclaimed Distributions.**

1.      Record Date for Distribution.

On the Distribution Record Date, the Claims Register shall be closed and the Reorganized Debtors shall be authorized and entitled to recognize only those record Holders listed on the Claims Register as of the close of business on the Distribution Record Date.

2.      Delivery of Distributions.

Except as otherwise provided herein, the Reorganized Debtors shall make distributions to Holders of Allowed Claims as of the Distribution Record Date at the address for each such Holder as indicated on the Debtors' records as of the date of any such distribution. The manner of such distributions shall be determined at the discretion of the Reorganized Debtors, and the address for each Holder of an Allowed Claim shall be deemed to be the address set forth in any Proof of Claim Filed by that Holder.

3.      Undeliverable Distributions and Unclaimed Property.

In the event that any distribution to any Holder is returned as undeliverable, no distribution to such Holder shall be made unless and until the Reorganized Debtors have determined the then-current address of such Holder, at which time such distribution shall be made to such Holder without interest; *provided*, *however*, that such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of six (6) months from the Effective Date. After such date, all unclaimed property or interests in property shall revert to the applicable Reorganized Debtor(s) automatically and without need for a further order by the Bankruptcy Court (notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws to the contrary), and any claim of any Holder to such property shall be fully discharged, released, and forever barred.

## C.     Manner of Payment.

Unless as otherwise set forth herein, all distributions of Cash, the New Reorganized Tenrgys Membership Interests, the New Secured Term Loan, and the Telpico membership interests, as and to the extent applicable, to the Holders of Allowed Claims under the Plan shall be made by the Reorganized Debtors. In the event PanAm elects to receive the Colombian Assets in lieu of the Telpico membership interests, the Reorganized Debtors shall cause Telpico to make such distributions. At the option of the Reorganized Debtors, any Cash payment to be made under the Plan may be made by check or wire transfer or as otherwise required or provided in applicable agreements.

## D.     SEC Exemption.

The New Reorganized Tenrgys Membership Interests and the Telpico membership interests may be "securities," as defined in Section 2(a)(1) of the Securities Act, section 101 of the Bankruptcy Code, and applicable state securities laws. The issuance of New Reorganized Tenrgys Membership Interests under the Plan and the assignment of Telpico membership interests under the Plan are effectuated in reliance upon section 1145 of the Bankruptcy Code.

## E.     Compliance with Tax Requirements.

In connection with the Plan, as applicable, the Debtors and the Reorganized Debtors shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit with respect to distributions under the Plan. Notwithstanding any provision herein to the contrary, the Debtors and the Reorganized Debtors shall be authorized to take all actions necessary to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, and establishing any other mechanisms they believe are reasonable and appropriate to comply with such requirements. The Debtors and the Reorganized Debtors reserve the right to allocate all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support, and other spousal awards, liens, and encumbrances.

## F.     No Postpetition or Default Interest on Claims.

Unless otherwise specifically provided for in the Plan or the Confirmation Order, and notwithstanding any documents that govern the Debtors' prepetition funded indebtedness to the contrary, (a) postpetition and/or default interest shall not accrue or be paid on any Claims, and (b) no Holder of a Claim shall be entitled to: (i) interest accruing on or after the Petition Date on any such Claim; or (ii) interest at the contract default rate, as applicable; provided, however, for the avoidance of doubt, this romanette (ii) does not apply to the 2013 Loan Claims.

## G.     Setoffs and Recoupment.

Unless otherwise provided for in the Plan or the Confirmation Order, the Debtors and Reorganized Debtors, as applicable, may, but shall not be required to, setoff against or recoup any payments or distributions to be made under the Plan in respect of any Claims, rights and

Causes of Action of any nature whatsoever that the Debtors or the Reorganized Debtors may have against the claimant, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors or the Reorganized Debtors of any such claim it may have against the Holder of such Claim.

**H.      No Double Payment of Claims.**

To the extent that a Claim is Allowed against more than one Debtor's Estate, there shall be only a single recovery on account of that Allowed Claim, but the Holder of an Allowed Claim against more than one Debtor may recover distributions from all co-obligor Debtors' Estates until the Holder has received payment in full on the Allowed Claims. No Holder of an Allowed Claim shall be entitled to receive more than payment in full of its Allowed Claim, and each Claim shall be administered and treated in the manner provided by the Plan only until payment in full on that Allowed Claim.

**I.      Claims Paid or Payable by Third Parties.**

1.      Claims Paid by Third Parties.

The Debtors or the Reorganized Debtors, as applicable, shall reduce a Claim, and such Claim shall be disallowed without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment on account of such Claim from a party that is not a Debtor or a Reorganized Debtor. Subject to the last sentence of this paragraph, to the extent a Holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not a Debtor or a Reorganized Debtor on account of such Claim, such Holder shall, within fourteen (14) days of receipt thereof, repay or return the distribution to the applicable Reorganized Debtor, to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan. The failure of such Holder to timely repay or return such distribution shall result in the Holder owing the applicable Reorganized Debtor annualized interest at the Federal Judgment Rate on such amount owed for each Business Day after the 14-day period specified above until the amount is repaid.

2.      Claims Payable by Third Parties.

Except as otherwise provided under the Plan, (i) no distributions under the Plan shall be made on account of an Allowed Claim that is payable under one of the Debtors' insurance policies until the Holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy, and (ii) to the extent that one or more of the Debtors' insurers agrees to satisfy in full or in part a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurers' agreement, the applicable portion of such Claim may be expunged without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

3.     Applicability of Insurance Policies.

Except as otherwise provided in the Plan, distributions to Holders of Allowed Claims shall be in accordance with the provisions of any applicable insurance policy. Nothing contained in the Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtors or any Entity may hold against any other Entity, including insurers under any policies of insurance, nor shall anything contained herein (a) constitute or be deemed a waiver by such insurers of any rights or defenses, including coverage defenses, held by such insurers, or (b) establish, determine, or otherwise imply any liability or obligation, including any coverage obligation, of any insurer.

**J.     Allocation of Distributions Between Principal and Interest.**

To the extent that any Allowed Claim entitled to a distribution under the Plan is comprised of indebtedness and accrued but unpaid interest thereon, such distribution shall be allocated to the principal amount (as determined for U.S. federal income tax purposes) of the Claim first, and then to accrued but unpaid interest, subject in the case of the 2013 Loan Claims, the consent of the Consenting 2013 Loan Lender.

**ARTICLE VII.**
**PROCEDURES FOR RESOLVING CONTINGENT,**
**UNLIQUIDATED, AND DISPUTED CLAIMS**

**A.     Allowance of Claims.**

Except as otherwise set forth in the Plan, after the Effective Date, each of the Reorganized Debtors shall have and retain any and all rights and defenses such Debtor had with respect to any Claim immediately before the Effective Date. Except as specifically provided in the Plan or in any order entered in the Chapter 11 Cases before the Effective Date (including the Confirmation Order), no Claim shall become an Allowed Claim unless and until such Claim is deemed Allowed under the Plan or the Bankruptcy Code, or the Bankruptcy Court has entered a Final Order, including the Confirmation Order (when it becomes a Final Order), in the Chapter 11 Cases allowing such claim. The Debtors may, but are not required to, affirmatively determine to deem Unimpaired Claims Allowed to the same extent such Claims would be allowed under applicable non-bankruptcy law.

**B.     Claims Administration Responsibilities.**

Except as otherwise specifically provided in the Plan, after the Effective Date, the applicable Reorganized Debtor(s) shall have the sole authority: (1) to File, withdraw, or litigate to judgment, objections to Claims; (2) to settle or compromise any Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court; and (3) to administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court. For the avoidance of doubt, except as otherwise provided in the Plan, from and after the Effective Date, each Reorganized Debtor shall have and retain any and all rights and defenses such Debtor had immediately prior to the Effective Date with respect to any Disputed Claim or Interest, including the Causes of Action retained pursuant to Article IV.Q of the Plan.

C.    **Estimation of Claims or Interests.**

Before or after the Effective Date, the Debtors or the Reorganized Debtors, as applicable, may (but are not required to) at any time request that the Bankruptcy Court estimate any Disputed Claim or Interest that is contingent or unliquidated under section 502(c) of the Bankruptcy Code for any reason, regardless of whether any party previously has objected to such Claim or Interest or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any such Claim or Interest, including during the litigation of any objection to any Claim or Interest or during the appeal relating to such objection. Notwithstanding any provision otherwise in the Plan, a Claim that has been expunged from the Claims Register, but that either is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court. In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim or Interest, that estimated amount shall constitute a maximum limitation on such Claim or Interest for all purposes under the Plan (including for purposes of distributions), and the relevant Reorganized Debtor may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim.

Notwithstanding section 502(j) of the Bankruptcy Code, in no event shall any Holder of a Claim that has been estimated under section 502(c) of the Bankruptcy Code or otherwise be entitled to seek reconsideration of such estimation unless such Holder has Filed a motion requesting the right to seek such reconsideration on or before seven (7) days after the date on which such Claim is estimated. Each of the foregoing Claims and objection, estimation, and resolution procedures are cumulative and not exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

D.    **Adjustment to Claims or Interests without Objection.**

Any Claim or Interest that has been paid or satisfied, or any Claim or Interest that has been amended or superseded, may be adjusted or expunged on the Claims Register by the Reorganized Debtors without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

E.    **Time to File Objections to Claims or Interests.**

Any objections to Claims or Interests shall be Filed on or before the Claims Objection Deadline.

F.    **Disallowance of Claims.**

Any Claims held by Entities from which the Bankruptcy Court has determined that property is recoverable under section 542, 543, 550, or 553 of the Bankruptcy Code or that is a transferee of a transfer that the Bankruptcy Court has determined is avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, shall be deemed disallowed under section 502(d) of the Bankruptcy Code, and Holders of such Claims may not receive any distributions on account of such Claims until such time as such Causes of Action against that Entity have been settled or a Bankruptcy Court order with respect thereto has been

entered and the full amount of such obligation to the Debtors has been paid or turned over in full. All Proofs of Claim Filed on account of an Indemnification Obligation shall be deemed satisfied and expunged from the Claims Register as of the Effective Date to the extent such Indemnification Obligation is assumed (or honored or reaffirmed, as the case may be) under the Plan, without any further notice to or action, order, or approval of the Bankruptcy Court.

**Except as provided herein or otherwise agreed, any and all Proofs of Claim Filed after the Bar Date shall be deemed disallowed and expunged as of the Effective Date without any further notice to or action, order, or approval of the Bankruptcy Court, and Holders of such Claims may not receive any distributions on account of such Claims, unless on or before the Confirmation Hearing such late Claim has been deemed timely Filed by a Final Order.**

G.    **Amendments to Proofs of Claim.**

On or after the Effective Date, a Proof of Claim may not be Filed or amended without the prior authorization of the Bankruptcy Court or the Reorganized Debtors, and any such new or amended Proof of Claim Filed that is not so authorized before it is Filed shall be deemed disallowed in full and expunged without any further action.

H.    **No Distributions Pending Allowance.**

Except as otherwise set forth herein, if an objection to a Claim or Interest or portion thereof is Filed as set forth in Article VII.A and Article VII.B of the Plan, no payment or distribution provided under the Plan shall be made on account of such Claim or Interest unless and until such Disputed Claim or Interest becomes an Allowed Claim or Interest.

I.    **Distributions After Allowance.**

To the extent that a Disputed Claim or Interest ultimately becomes an Allowed Claim or Interest, distributions (if any) shall be made to the Holder of such Allowed Claim or Interest in accordance with the provisions of Article VII.A. As soon as reasonably practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim or Interest becomes a Final Order, the Disbursing Agent shall provide to the Holder of such Claim or Interest the distribution (if any) to which such Holder is entitled under the Plan as of the Effective Date, without any interest to be paid on account of such Claim or Interest.

J.    **No Interest.**

Interest shall not accrue or be paid on any Disputed Claim with respect to the period from the Effective Date to the date a final distribution is made on account of such Disputed Claim, if and when such Disputed Claim becomes an Allowed Claim.

## ARTICLE VIII.
## SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS

### A.  Compromise and Settlement of Claims, Interests, and Controversies

The Plan shall constitute a good-faith compromise and settlement of all Claims, Interests, and controversies relating to the contractual, legal, and subordination rights that a Holder of a Claim or Interest may have with respect to any Allowed Claim or Interest, or any distribution to be made on account of such Allowed Claim or Interest. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Interests, and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtors, their Estates, and Holders of Claims and Interests and is fair, equitable, and reasonable. In accordance with the provisions of the Plan, under Bankruptcy Rule 9019, without any further notice to or action, order, or approval of the Court, after the Effective Date, Reorganized Tenrgys (or any other party, as determined by the Debtors) may compromise and settle Claims against, and Interests in, the Debtors and their Estates and Causes of Action against other Entities. The compromises, settlements, and releases described herein shall be deemed nonseverable from each other and from all other terms of the Plan.

### B.  Discharge of Claims.

Under section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Definitive Documents, the Plan, or in any contract, instrument, or other agreement or document created or entered into pursuant to the Plan, the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims (including any Intercompany Claims resolved or compromised after the Effective Date by the Reorganized Debtors), Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims or Interests relate to services performed by employees of the Debtors prior to the Effective Date and that arise from a termination of employment, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not: (1) a Proof of Claim based upon such debt or right is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code; (2) a Claim or Interest based upon such debt, right, or interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (3) the holder of such a Claim or Interest has accepted the Plan. The Confirmation Order shall be a judicial determination of the discharge of all Claims (other than Reinstated Claims) and Interests (other than Reinstated Interests) subject to the occurrence of the Effective Date.

**C.      Release of Liens.**

Except as otherwise specifically provided in the Plan or in any contract, instrument, release, or other agreement or document created under the Plan, on the Effective Date and concurrently with the applicable distributions made under the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, except for Other Secured Claims that the Debtors elect to Reinstate in accordance with Article III.B.1 of the Plan, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released and discharged, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Reorganized Debtors and their successors and assigns (including Reorganized Tenrgys), in each case, without any further approval or order of the Bankruptcy Court and without any action or Filing being required to be made by the Debtors or Reorganized Debtors; *provided*, that this Article VIII.C shall not apply to the Claims of TOG to the extent, if any, such Claims constitute Secured Claims.

Any holder of such Secured Claim (and the applicable agents for such holder) shall be authorized and directed, at the sole cost and expense of the Reorganized Debtors, to release any collateral or other property of any Debtor (including any cash collateral and possessory collateral) held by such holder (and the applicable agents for such holder), and to take such actions as may be reasonably requested by the Reorganized Debtors to evidence the release of such Liens and/or security interests, including the execution, delivery, and filing or recording of such releases. The presentation or filing of the Confirmation Order to or with any federal, state, provincial, or local agency, records office, or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Liens.

To the extent that any holder of a Secured Claim that has been satisfied or discharged in full pursuant to the Plan, or any agent for such holder, has filed or recorded publicly any Liens and/or security interests to secure such holder's Secured Claim, then as soon as practicable on or after the Effective Date, such holder (or the agent for such holder) shall take any and all steps requested by the Debtors or the Reorganized Debtors that are necessary or desirable to record or effectuate the cancellation and/or extinguishment of such Liens and/or security interests, including the making of any applicable filings or recordings, and the Reorganized Debtors shall be entitled to make any such filings or recordings on such holder's behalf.

**D.      Releases by the Debtors.**

Notwithstanding anything contained herein to the contrary, to the fullest extent permitted by applicable law and approved by the Bankruptcy Court, under section 1123(b) of the Bankruptcy Code, for good and valuable consideration, the adequacy of which is hereby confirmed, on and after the Effective Date, each Released Party is deemed to be, hereby conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by each and all of the Debtors, the Reorganized Debtors, and their Estates, and any person seeking to exercise the rights of the Debtors or their

Estates, including any successors to the Debtors or any Estates representatives appointed or selected pursuant to section 1123(b)(3) of the Bankruptcy Code, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any Claim or Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, from any and all Claims, interests, obligations, rights, suits, damages, Causes of Action, including any derivative claims, asserted on behalf of the Debtors, the Reorganized Debtors, or their Estates, as applicable, whether known or unknown, foreseen or unforeseen, matured or unmatured, asserted or unasserted, suspected or unsuspected, accrued or unaccrued, fixed, contingent or noncontingent, pending or threatened, existing or hereafter arising, in law, equity, contract, tort or otherwise, that the Debtors, the Reorganized Debtors, or their Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim against, or Interest in, a Debtor or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the Debtors' capital structure, management, ownership, or operation thereof), the assertion or enforcement of rights and remedies against the Debtors, the Debtors' in- or out-of-court restructuring efforts, any avoidance actions, intercompany transactions between or among a Debtor or an affiliate of a Debtor and another Debtor or affiliate of a Debtor, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, entry into or filing of the RSA, the Disclosure Statement, the Plan (including, for the avoidance of doubt, the Plan Supplement), the Definitive Documents, or any aspect of the Restructuring Transactions, including any contract, instrument, release, or other agreement or document created or entered into in connection with the RSA, the Disclosure Statement, the Plan, or the Definitive Documents, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of consummation of the Plan, the administration and implementation of the Plan or the distribution of property under the Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence, in each case, taking place on or before the Plan Effective Date related or relating to any of the foregoing. Notwithstanding anything contained herein to the contrary, the foregoing release does not release any obligations of any party under the Plan or any document, instrument, or agreement executed to implement the Plan.

Notwithstanding anything contained herein to the contrary, the foregoing release does not release (i) any obligations of any party under the Plan or any document, instrument, or agreement executed to implement the Plan, (ii) any claims related to any act or omission that is determined in a Final Order to have constituted willful misconduct, gross negligence, or actual fraud, (iii) the rights of any current employee of the Debtors under any employment agreement or plan, (iv) the rights of the Debtors with respect to any confidentiality provisions or covenants restricting competition in favor of the Debtors under any employment agreement with a current or former employee of the Debtors, or (v) the rights of holders of Allowed Claims or Interests to receive distributions under the Plan.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the foregoing Debtor release, which

includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the foregoing Debtor release is: (a) in exchange for the good and valuable consideration provided by the Released Parties, including, without limitation, the Released Parties' contributions to facilitating the Restructuring Transactions and implementing the Plan; (b) a good faith settlement and compromise of the Claims released by the foregoing Debtor release; (c) in the best interests of the Debtors and their Estates and all holders of Claims and Interests; (d) fair, equitable, and reasonable; (e) given and made after due notice and opportunity for hearing; and (f) a bar to any of the Debtors, the Reorganized Debtors, or the Debtors' Estates asserting any Claim or Cause of Action released pursuant to the foregoing Debtor release.

E.      Releases by Holders of Claims and Interests.

Except as otherwise expressly set forth in the Plan or the Confirmation Order, on and after the Effective Date, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, each Released Party is, and is deemed to be, hereby conclusively, absolutely, unconditionally, irrevocably and forever, released and discharged by each and all of the Releasing Party from any and all Causes of Action, whether known or unknown, foreseen or unforeseen, matured or unmatured, asserted or unasserted, suspected or unsuspected, accrued or unaccrued, fixed, contingent or noncontingent, pending or threatened, existing or hereafter arising, in law, equity, contract, tort, or otherwise, including any derivative claims asserted on behalf of the Debtors, the Reorganized Debtors, or their Estates, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the Debtors' capital structure, management, ownership, or operation thereof), the Debtors' in- or out-of-court restructuring efforts, intercompany transactions between or among a Debtor or an affiliate of a Debtor and another Debtor or affiliate of a Debtor, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, entry into or filing of the RSA, the Disclosure Statement, the Plan (including, for the avoidance of doubt, the Plan Supplement), the Definitive Documents, or any aspect of the Restructuring Transactions, including any contract, instrument, release, or other agreement or document created or entered into in connection with the RSA, the Disclosure Statement, the Plan, or the Definitive Documents, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of consummation of the Plan, the administration and implementation of the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence, in each case, taking place on or before the Plan Effective Date related or relating to any of the foregoing.

Notwithstanding anything contained herein to the contrary, the foregoing release does not release (i) any obligations of any party under the Plan or any document, instrument, or agreement executed to implement the Plan, (ii) any claims related to any act or omission that is determined in a Final Order to have constituted willful misconduct, gross negligence, or actual fraud, (iii) the rights of any current employee of the Debtors under any employment agreement or plan, (iv) the rights of

the Debtors with respect to any confidentiality provisions or covenants restricting competition in favor of the Debtors under any employment agreement with a current or former employee of the Debtors, or (v) the rights of holders of Allowed Claims or Interests to receive distributions under the Plan.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the foregoing third-party release, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Bankruptcy Court's finding that the foregoing third-party release is: (a) consensual; (b) essential to the Confirmation of the Plan; (c) given in exchange for a substantial contribution and for the good and valuable consideration provided by the Released Parties that is important to the success of the Plan; (d) a good faith settlement and compromise of the Claims released by the foregoing third-party release; (e) in the best interests of the Debtors and their Estates; (f) fair, equitable, and reasonable; (g) given and made after due notice and opportunity for hearing; and (h) a bar to any of the Releasing Parties asserting any claim or Cause of Action released pursuant to the foregoing third-party release.

F.      Exculpation

Except as otherwise specifically provided in the Plan, no Exculpated Party shall have or incur liability for, and each Exculpated Party is hereby released and exculpated from any Cause of Action for any claim related to any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, entry into, filing or termination of the RSA and related prepetition transactions, the Disclosure Statement, the Plan, the Plan Supplement, or any transaction related to the Restructuring Transactions, any contract, instrument, release or other agreement or document created or entered into before or during the Chapter 11 Cases, any preference, fraudulent transfer, or other avoidance claim arising under chapter 5 of the Bankruptcy Code or other applicable law, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of consummation of the Plan, the administration and implementation of the Plan or the distribution of property under the Plan or any other related agreement, except for claims related to any act or omission that is determined in a Final Order to have constituted actual fraud, gross negligence or willful misconduct, but in all respects such Exculpated Parties shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.

G.      Injunction

Except as otherwise expressly provided in the Plan or for obligations issued or required to be paid under the Plan or the Confirmation Order, all Entities that have held, hold, or may hold claims or interests that have been released under Article VIII.D or Article VIII.E of the Plan, shall be discharged under Article VIII.A of the Plan, or are subject to exculpation under Article VIII.F of the Plan, are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as

applicable, the Debtors, the Reorganized Debtors, or the Released Parties: (i) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests; (ii) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such claims or interests; (iii) creating, perfecting, or enforcing any lien or encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such claims or interests; (iv) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such claims or interests unless such Entity has timely asserted such setoff right in a document Filed with the Bankruptcy Court explicitly preserving such setoff, and notwithstanding an indication of a claim or interest or otherwise that such Entity asserts, has, or intends to preserve any right of setoff under applicable law or otherwise; and (v) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests released or settled under the Plan; *provided, however,* that such injunction shall not apply to claims related to any act or omission that is determined in a final order to have constituted actual fraud, willful misconduct, or gross negligence.

Upon entry of the Confirmation Order, all holders of Claims and Interests and their respective current and former employees, agents, officers, directors, principals, and direct and indirect Affiliates shall be enjoined from taking any actions to interfere with the implementation or Consummation of the Plan. Each holder of an Allowed Claim or Allowed Interest, as applicable, by accepting, or being eligible to accept, distributions under or Reinstatement of such Claim or Interest, as applicable, pursuant to the Plan, shall be deemed to have consented to the injunction provisions set forth in this Article VIII.G.

**H.     Protections Against Discriminatory Treatment**

Consistent with section 525 of the Bankruptcy Code and the Supremacy Clause of the U.S. Constitution, all Entities, including Governmental Units, shall not discriminate against the Reorganized Debtors or deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, the Reorganized Debtors, or another Entity with whom the Reorganized Debtors have been associated (including TOG), solely because each Debtor has been a debtor under chapter 11 of the Bankruptcy Code, has been insolvent before the commencement of the Chapter 11 Cases (or during the Chapter 11 Cases but before the Debtors are granted or denied a discharge), or has not paid a debt that is dischargeable in the Chapter 11 Cases.

**I.     Regulatory Activities**

Notwithstanding anything to the contrary herein, nothing in the Plan or Confirmation Order is intended to affect the police or regulatory activities of Governmental Units or other

governmental agencies, except to the extent permitted by the Bankruptcy Code and other applicable law.

## J.      Recoupment

In no event shall any Holder of Claims or Interests be entitled to recoup any Claim against any claim, right, or Cause of Action of the Debtors or the Reorganized Debtors, as applicable, unless such Holder actually has performed such recoupment and provided notice thereof in writing to the Debtors on or before the Confirmation Date, notwithstanding any indication in any Proof of Claim or otherwise that such Holder asserts, has, or intends to preserve any right of recoupment. Neither the failure to effect such a setoff nor the allowance of any Claim under the Plan shall constitute a waiver or release by the Debtors, the Reorganized Debtors or any other party in interests of any such Claims, Interests, rights and Causes of Action that the Debtors, the Reorganized Debtors or any other party in interest may possess against any such holder, except as specifically provided herein.

## K.      Document Retention

On and after the Effective Date, the Reorganized Debtors may maintain documents in accordance with their standard document retention policy, as may be altered, amended, modified, or supplemented by the Reorganized Debtors.

### ARTICLE IX.
### CONDITIONS PRECEDENT TO CONFIRMATION
### AND CONSUMMATION OF THE PLAN

## A.      Conditions Precedent to Confirmation

It shall be a condition to Confirmation with respect to the Debtors that the following shall have been satisfied or waived under the provisions of Article IX.C of the Plan:

1.      The Definitive Documents will contain terms and conditions consistent in all respects with the RSA, and otherwise acceptable or reasonably acceptable, as applicable, in form and substance to the Consenting 2013 Loan Lender;

2.      the Bankruptcy Court shall have entered the Disclosure Statement Order, in form and substance acceptable to the Consenting 2013 Loan Lender, and such Disclosure Statement Order shall not have been reversed, stayed, amended, modified, dismissed, vacated, or reconsidered in form or substance that is not otherwise acceptable to the Consenting 2013 Loan Lender;

3.      the Plan Supplement and any other Definitive Document then in effect or Filed with the Bankruptcy Court will contain terms and conditions consistent in all respects with the RSA, and otherwise reasonably acceptable in form and substance to the Consenting 2013 Loan Lender; and

4.     the RSA shall remain in full force and effect and shall not have been terminated, and there shall be no default thereunder.

## B.     Conditions Precedent to the Effective Date

It shall be a condition to the Effective Date that the following conditions shall have been satisfied or waived under the provisions of Article IX.C of the Plan:

1.     The Definitive Documents will contain terms and conditions consistent in all respects with the RSA, and otherwise acceptable or reasonably acceptable, as applicable, in form and substance to the Consenting 2013 Loan Lender and such Definitive Documents for the Restructuring Transactions shall have been executed and remain in full force and effect;

2.     the Plan Supplement and any other Definitive Document then in effect or Filed with the Bankruptcy Court will contain terms and conditions consistent in all material respects with the RSA, and otherwise reasonably satisfactory in form and substance to the Consenting 2013 Loan Lender and such Plan Supplement documents for the Restructuring Transactions shall have been executed and remain in full force and effect;

3.     the RSA and any other Definitive Document then in effect or Filed with the Bankruptcy Court shall remain in full force and effect and shall not have been terminated, and there shall be no default thereunder;

4.     the Bankruptcy Court will have entered the Confirmation Order, in form and substance acceptable to the Consenting 2013 Loan Lender, and such Confirmation Order will not have been reversed, stayed, amended, modified, dismissed, vacated, or reconsidered, unless in form and substance that is acceptable to the Consenting 2013 Loan Lender;

5.     the final version of the Plan, Plan Supplement, and all of the schedules, documents, and exhibits contained therein, and all other schedules, documents, supplements, and exhibits to the Plan (or contemplated by the RSA) shall be consistent with the RSA, and in form and substance acceptable or reasonably acceptable, as applicable, to the Consenting 2013 Loan Lender;

6.     the Debtors shall have obtained all material authorizations, consents, regulatory approvals, rulings, or documents that are necessary to implement and effectuate the Plan, including Bankruptcy Court approval, and each of the other transactions contemplated by the Restructuring Transactions, and such material authorizations, consents, regulatory approvals, rulings, or documents shall not be subject to unfulfilled conditions and shall be in full force and effect, and all applicable regulatory waiting periods will have expired;

7.     the Debtors shall have complied, in all material respects, with the terms of the Plan that are to be performed by the Debtors on or prior to the Effective Date and the conditions to the occurrence of the Effective Date (other than any conditions relating to the occurrence of the closing) set forth in the Plan shall have been satisfied or, with the prior consent of the Consenting 2013 Loan Lender waived in accordance with the terms of the Plan;

8.      the Restructuring Transactions to be implemented on the Effective Date shall be consistent with the Plan and the RSA;

9.      the Debtors shall have paid in full and in cash all Consenting 2013 Loan Lender Restructuring Expenses invoiced no later than one business day prior to the Effective Date;

10.      the New Secured Term Loan Documents will be in full force and effect as of the Effective Date; and

11.      the Debtors shall not have filed, supported, or consented to any motion, application, adversary proceeding, or cause of action (A) challenging the validity or enforceability of, or seeking avoidance or subordination of the 2013 Loan Claim, (B) otherwise seeking to impose liability upon or enjoin the Consenting 2013 Loan Lender, or (C) by any third party seeking standing to bring such application, adversary proceeding, or cause of action.

## C.      Waiver of Conditions

The conditions to Confirmation and Consummation set forth in this Article IX may be waived may be waived, in whole or in part, in writing (which may be via e-mail) by the Debtors and the Consenting 2013 Loan Lender, without notice, leave, or order of the Bankruptcy Court or any formal action other than proceedings to confirm or consummate the Plan.

## D.      Substantial Consummation

"Substantial Consummation" of the Plan, as defined in 11 U.S.C. § 1101(2), with respect to any of the Debtors, shall be deemed to occur on the Effective Date with respect to such Debtor.

## E.      Effect of Failure of Conditions

If the Effective Date does not occur with respect to any of the Debtors, the Plan shall be null and void in all respects with respect to such Debtor, and nothing contained in the Plan or the Disclosure Statement shall: (1) constitute a waiver or release of any Claims by or Claims against or Interests in such Debtors; (2) prejudice in any manner the rights of such Debtors, any Holders of a Claim or Interest, or any other Entity; or (3) constitute an admission, acknowledgment, offer, or undertaking by such Debtors, any Holders, or any other Entity in any respect.

## ARTICLE X.
## MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

## A.      Modification and Amendments

Subject to the limitations contained in the Plan and the RSA, the Debtors reserve the right to modify the Plan and seek Confirmation consistent with the Bankruptcy Code and, as appropriate, not resolicit votes on such modified Plan. Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in the Plan and the RSA, the Debtors expressly reserve their rights to alter, amend, or modify materially the Plan, one or more times, after

Confirmation, and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan.

**B.      Effect of Confirmation on Modifications**

Entry of a Confirmation Order shall mean that all modifications or amendments to the Plan since the solicitation thereof are approved under section 1127(a) of the Bankruptcy Code and do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

**C.      Revocation or Withdrawal of Plan**

The Debtors reserve the right to revoke or withdraw the Plan before the Confirmation Date, consistent with the RSA. If the Debtors revoke or withdraw the Plan, or if Confirmation and Consummation does not occur, then: (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Interest or Class of Claims or Interests), assumption or rejection of Executory Contracts or Unexpired Leases effectuated by the Plan, and any document or agreement executed under the Plan, shall be deemed null and void; and (3) nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims or Interests; (b) prejudice in any manner the rights of the Debtors or any other Entity, including the Holders of Claims; or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtors or any other Entity.

**ARTICLE XI.**
**RETENTION OF JURISDICTION**

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or related to, the Chapter 11 Cases and the Plan under sections 105(a) and 1142 of the Bankruptcy Code to the extent provided under applicable law, including jurisdiction to:

1.      allow, disallow, determine, liquidate, classify, estimate, or establish the priority, Secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the Secured or unsecured status, priority, amount, or allowance of Claims or Interests;

2.      decide and resolve all matters related to the granting and denying, in whole or in part, of any applications for allowance of compensation or reimbursement of expenses to Professionals authorized under the Bankruptcy Code or the Plan;

3.      resolve any matters related to: (a) the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease to which a Debtor is party or with respect to which a Debtor may be liable and to hear, determine, and, if necessary, liquidate, any Claims arising therefrom, including Cure Claims under section 365 of the Bankruptcy Code; (b) any potential contractual obligation under any Executory Contract or Unexpired Lease that is

assumed; (c) the Reorganized Debtors' amending, modifying, or supplementing, after the Effective Date, under Article V of the Plan, any Executory Contracts or Unexpired Leases to the Rejected Executory Contracts and Unexpired Lease List, or otherwise; and (d) any dispute regarding whether a contract or lease is or was executory or expired;

4.      adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving a Debtor that may be pending on the Effective Date;

5.      adjudicate, decide, or resolve any and all matters related to Causes of Action;

6.      adjudicate, decide, or resolve any and all matters related to section 1141 of the Bankruptcy Code;

7.      enter and implement such orders as may be necessary to execute, implement, or consummate the Plan and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan or the Disclosure Statement, including injunctions or other actions as may be necessary to restrain interference by an Entity with Consummation or enforcement of the Plan;

8.      enter and enforce any order for the sale of property under sections 363, 1123, or 1146(a) of the Bankruptcy Code;

9.      adjudicate, decide, or resolve any and all matters related to the Restructuring Transactions;

10.     grant any consensual request to extend the deadline for assuming or rejecting Unexpired Leases under section 365(d)(4) of the Bankruptcy Code;

11.     resolve any cases, controversies, suits, disputes, Causes of Action, or any other matters that may arise in connection with the Consummation, interpretation, or enforcement of the Plan, the Disclosure Statement, the Confirmation Order, or the Restructuring Transactions, or any Entity's obligations incurred in connection with the foregoing, including disputes arising under agreements, documents, or instruments executed in connection with the Plan, the Disclosure Statement, the Confirmation Order, or the Restructuring Transactions;

12.     resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the releases, injunctions, and other provisions contained in Article VIII of the Plan and enter such orders as may be necessary to implement such releases, injunctions, and other provisions;

13.     resolve any cases, controversies, suits, disputes, or Causes of Action relating to the distribution or the repayment or return of distributions and the recovery of additional amounts owed by the Holder of a Claim for amounts not timely repaid under Article VI.I.1 of the Plan;

14.     issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by or assess damages against any Entity with Consummation or enforcement of the Plan or the Restructuring Transactions;

15.     enter and implement such orders as are necessary if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

16.     enter an order or decree concluding or closing the Chapter 11 Cases;

17.     adjudicate any and all disputes arising from or relating to distributions under the Plan or any of the transactions contemplated therein;

18.     consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

19.     determine requests for the payment of Claims entitled to priority under section 507 of the Bankruptcy Code;

20.     hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code, including any request made under section 505 of the Bankruptcy Code for the expedited determination of any unpaid liability of a Debtor for any tax incurred during the administration of the Chapter 11 Cases, including any tax liability arising from or relating to the Restructuring Transactions, for tax periods ending after the Petition Date and through the closing of the Chapter 11 Cases;

21.     hear and determine all disputes involving the existence, nature, or scope of the release provisions set forth in the Plan;

22.     hear and determine all disputes involving the obligations or terms of the Exit Facility and the New Secured Term Loan;

23.     except as otherwise limited herein, recover all assets of the Debtors and property of the Estates, wherever located;

24.     enforce all orders previously entered by the Bankruptcy Court; and

25.     hear any other matter not inconsistent with the Bankruptcy Code.

As of the Effective Date, notwithstanding anything in this Article XI to the contrary, the Reorganized Equity Documents, the New Secured Term Loan Documents and any documents related thereto shall be governed by the jurisdictional provisions therein and the Bankruptcy Court shall retain jurisdiction with respect thereto.

## ARTICLE XII.
## MISCELLANEOUS PROVISIONS

### A.     Immediate Binding Effect.

Subject to Article IX.B of the Plan, as applicable, and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan shall be immediately effective and enforceable and deemed binding upon the Debtors, the Reorganized Debtors, and any and all Holders of Claims or Interests (irrespective of whether such Claims or Interests are deemed to have accepted the Plan), all Entities that are parties to or

are subject to the settlements, compromises, releases, discharges, exculpations, and injunctions described in the Plan, each Entity acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors. All Claims and debts shall be as fixed, adjusted, or compromised, as applicable, under the Plan regardless of whether any Holder of a Claim or debt has voted on the Plan.

**B.      Additional Documents.**

On or before the Effective Date, the Debtors may File with the Bankruptcy Court such agreements and other documents as may be necessary or advisable to effectuate and further evidence the terms and conditions of the Plan, consistent with the terms of the RSA. The Debtors or the Reorganized Debtors, as applicable, and all Holders of Claims and Interests receiving distributions under the Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

**C.      Payment of Statutory Fees.**

All fees payable under section 1930(a) of the Judicial Code, including fees and expenses payable to the U.S. Trustee, as determined by the Bankruptcy Court at a hearing under section 1128 of the Bankruptcy Code, will be paid by or on behalf of each of the applicable Reorganized Debtors for each quarter (including any fraction thereof) until the applicable Chapter 11 Case of such Reorganized Debtor is converted, dismissed, or closed, whichever occurs first. All such fees due and payable prior to the Effective Date shall be paid by the Debtors on the Effective Date. After the Effective Date, the applicable Reorganized Debtor shall pay or cause to be paid any and all such fees when due and payable, and shall file with the Bankruptcy Court quarterly reports in a form reasonably acceptable to the U.S. Trustee, until the earliest of the date on which the applicable Chapter 11 Case of the Reorganized Debtor is converted, dismissed, or closed.

**D.      Reservation of Rights.**

Except as expressly set forth in the Plan, the Plan shall have no force or effect unless the Bankruptcy Court enters the Confirmation Order. None of the Filing of the Plan, any statement or provision contained in the Plan, or the taking of any action by any Debtor with respect to the Plan, the Disclosure Statement, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of any Debtor or any other Entity with respect to the Holders of Claims or Interests prior to the Effective Date.

**E.      Successors and Assigns.**

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor, assign, affiliate, officer, director, manager, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

**F.      Notices.**

All notices, requests, and demands to or upon the Debtors to be effective shall be in writing (including by facsimile transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

1.      if to a Debtor or Reorganized Debtor, to:

> Tenrgys, LLC
> 602 Crescent Place
> Ridgeland, Mississippi  39157
> Attention: Richard H. Mills, Jr.
> Telephone: (601) 898-7444
> Email: rmills@tellusoperating.com

with copies to:

> Thomas E. Wofford
> 602 Crescent Place
> Ridgeland, Mississippi  39157
> Telephone No. (601) 898-7444
> Facsimile No. (601) 898-7446

> Copeland, Cook, Taylor & Bush, P.A.
> 1076 Highland Colony Parkway
> 600 Concourse, Suite 200
> Ridgeland, Mississippi  39157
> Attention: Glenn Gates Taylor, John Geary, Christopher Meredith
> Email: gtaylor@cctb.com; jgeary@cctb.com; cmeredith@cctb.com

2.      if to the Consenting 2013 Loan Lender, to:

> FSEP Investments, Inc.
> c/o EIG Management Company, LLC
> 600 New Hampshire Ave NW, Suite 1200
> Washington, DC  20037
> Attn: Eric Long; Legal Department
> Email: eric.long@eigpartners.com; notices@eigpartners.com
> Telephone: (202) 600-3693
> Fax:      (202) 600-4205

with copies to:

> Davis Polk & Wardwell
> 450 Lexington Avenue
> New York, NY  10017

Telephone No. (212) 450-4000
Atten: Damian S. Schaible and Jonah A. Peppiatt
Email: damian.schaible@davispolk.com and
jonah.peppiatt@davispolk.com

Adams and Reese LLP
300 Renaissance, 1018 Highland Colony Parkway, Suite 800
Ridgeland, Mississippi 39157
Attn: Timothy Anzenberger
Email: Tim.Anzenberger@arlaw.com

After the Effective Date, the Reorganized Debtors shall have the authority to send a notice to Entities that to continue to receive documents under Bankruptcy Rule 2002, such Entity must File a renewed request to receive documents under Bankruptcy Rule 2002. After the Effective Date, the Reorganized Debtors are authorized to limit the list of Entities receiving documents under Bankruptcy Rule 2002 to those Entities who have Filed such renewed requests.

## G.    Term of Injunctions or Stays

Unless otherwise provided in the Plan or the Confirmation Order, all injunctions or stays that are in force and effect in the Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date. All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

## H.    Entire Agreement

Except as otherwise indicated, the Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

## I.    Exhibits

All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan. After the exhibits and documents are Filed, copies of such exhibits and documents shall be available upon written request to the Debtors' attorneys at the address set forth in Article XII.F or by downloading the exhibits and documents from the Court's website at  https://ecf.mssb.uscourts.gov/ (for a fee).

## J.    Nonseverability of Plan Provisions

If, before Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and

provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (1) valid and enforceable by its terms; (2) integral to the Plan and may not be deleted or modified without the Debtors' or Reorganized Debtors' consent; *provided,* that any such deletion or modification must be consistent with the RSA, Exit Facility Documents, and New Secured Term Loan Documents, as applicable; and (3) nonseverable and mutually dependent.

**K.     Votes Solicited in Good Faith.**

Upon entry of the Confirmation Order, the Debtors and Reorganized Debtors will be deemed to have solicited votes on the Plan in good faith and in compliance with the Bankruptcy Code, and under section 1125(e) of the Bankruptcy Code, the Debtors, the Reorganized Debtors, and each of their respective Affiliates, agents, representatives, members, principals, shareholders, officers, directors, managers, employees, advisors, and attorneys will be deemed to have participated in good faith and in compliance with the Bankruptcy Code in the offer, issuance, sale, and purchase of Securities offered and sold under the Plan and any previous plan, and, therefore, neither any of such parties or individuals or the Debtors or the Reorganized Debtors will have any liability for the violation of any applicable law (including the Securities Act), rule, or regulation governing the solicitation of votes on the Plan or the offer, issuance, sale, or purchase of the Securities offered and sold under the Plan and any previous plan.

**L.     Waiver or Estoppel.**

Each Holder of a Claim or Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, Secured or not subordinated by virtue of an agreement made with the Debtors or their counsel, or any other Entity, if such agreement was not disclosed in the Plan, the Disclosure Statement, or papers Filed before the Confirmation Date.

**M.     Closing of Chapter 11 Cases**

The Reorganized Debtors shall, promptly after the full administration of the Chapter 11 Cases, File with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to close the Chapter 11 Cases; *provided* that the Reorganized Debtors may, in their discretion, close certain of the Chapter 11 Cases while allowing other Chapter 11 Cases to continue for the purposes of making distributions on account of Claims or administering to Claims as set forth in this Plan, or for any other provision set forth in this Plan.

Dated: October 1, 2021

**TENRGYS, LLC,**
on behalf of itself and all other Debtors

/s/ Richard H. Mills, Jr.
Richard H. Mills, Jr., Manager